## P. N. DAWSON v. THE STATE.

### No. 4046. Decided April 19, 1916.

1.—Swindling—Information—Variance.

Where there was a variance between the complaint and the information alleging the offense of swindling under article 1422, Penal Code, subdivision 4, new pleadings should be filed which are in consonance with each other as to the averments therein.

**2.—Variance—Insufficiency of the Evidence.**

Where, upon trial of swindling under article 1422, Penal Code, subdivision 4, there was a variance between the allegation in the information and the evidence, the same is reversible error.

**3.—Same—Charge of Court.**

Where, upon trial of swindling under article 1422, Penal Code, subdivision 4, it appeared by the evidence that defendant was an endorser of the alleged check and responsible for its payment, and it was not shown that he was in a conspiracy to defraud anyone, his requested charge presenting his theory of defense that he offered to pay said check, etc., and his honesty in the transaction should have been submitted to the jury.

**4.—Same—Endorser—Insufficiency of the Evidence—Statutes Construed.**

While it is not intended to here say that an endorser might not be responsible criminally under this statute, article 1422, Penal Code, subdivision 4, yet the State must show that defendant was in some way criminally connected with the proposition to defraud, and that he acted from that standpoint, and where the evidence does not show this sufficiently, the conviction was not sustained, and the judgment must be reversed and the cause remanded.

Appeal from the County Court of Pecos.  Tried below before the Hon. W. C. Jackson.

Appeal from a conviction of swindling; penalty, a fine of $50 and one day confinement in the county jail.

The opinion states the case.

*Higgins & Hamilton,* for appellant.—On question of variance between complaint and information:  Davis v. State, 2 Texas Crim. App., 184; Landrum v. State, 37 Texas Crim. Rep., 666; Woodward v. State, 33 id., 554; Martin v. State, 36 id., 125; Chaney v. State, 59 id., 283.

On question of variance between proof and allegation:  Courtney v. State, 3 Texas Crim. App., 257; Baker v. State, 14 id., 338; Feeney v. State, 58 Texas Crim. Rep., 152.

On question of refusal of requested charge:  Blum v. State, 20 Texas Crim. App., 578; Moody v. State, 24 id., 458; Johnson v. State, 57 Texas Crim. Rep., 347; Blackwell v. State, 51 S. W. Rep., 919.

On question of refusing to admit evidence:  Childers v. State, 16 Texas Crim. App., 524.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, Judge.—Appellant was convicted of swindling, his punishment being assessed at a fine of $50 and one day in the county jail.

The complaint and information are attacked because of the variance between the allegations in one as against those contained in the other. If it should be thought necessary to try this case again, we suggest that such pleadings be filed as are in consonance with each other as to the averments.  There are quite a number of bills of exception reserved to the court's charge, refusal to give special instructions, and to the admission and rejection of testimony.  To write in reference to all these questions would require a rather voluminous opinion.  The case, how-

ever, will be disposed of without going into all those matters, from a general view of the law and the facts.

The complaint and information were intended to be drawn to meet the requirements of article 1422, Penal Code, subdivision 4, which reads as follows: "The obtaining by any person of any money or other thing of value with intent to defraud by the giving or drawing of any check, draft or order upon any bank, person, firm or corporation, with which or with whom such person giving or drawing said check, draft or order has not at the time of the giving or drawing of such check, draft or order, or at the time when in the ordinary course of business such check, draft or order would be presented to the drawee for payment, sufficient funds to pay same, and no good reason to believe that such check, draft or order will be paid."

Without going into detail, the substance of the testimony may be thus stated: Lee Fowler and others were engaged in gambling. It seems appellant was not in the game, but his brother was. Fowler lost and borrowed money during the game amounting to $28.50, from defendant, for which Fowler gave him a check on a bank at Sweetwater, Texas. The game occurred at Fort Stockton, in Pecos County, 250 miles or more from Sweetwater. Directly after this check was given appellant he retired for the night. The next morning, desiring to make some purchases at a hardware store for his auto, he called on Lee Fowler to pay the check or get the money for him. Fowler promised to do so but did not. Appellant went to the hardware store for the purpose of buying an outer casing and an inner tube for his auto. These purchases amounted to $15.25. Appellant had no money, having loaned all of it but 40 cents to Fowler, while Fowler was playing cards. He tendered the check that Fowler gave him for $28.50, and after some discussion between the owner of the hardware store and appellant, Holbrook, the owner of the store, took the check after appellant had endorsed it, and for the remainder gave him $13.25 in money, which covered the entire check for $28.50. Holbrook testifies that appellant told him while they were speaking of the draft that it was good. Appellant says he told him that it was good; that he had paid the money on it. The complaint and information allege, in substance, that appellant informed Holbrook, before presenting said check to said Holbrook, he sent a telegram to the First National Bank of Sweetwater, upon which said check was drawn, inquiring of funds at said bank to secure its payment, and that said bank wired an answer that it would not pay the check of Lee Fowler, and that Lee Fowler had no funds there on deposit. It is further alleged in the information that appellant falsely represented to Holbrook the check was valid, legal and a valuable obligation; that same would be paid when presented for payment, and that the maker thereof, Lee Fowler, had sufficient funds in the bank upon which same was drawn to secure its payment, and did then and there by means of said false and fraudulent representations induce the said Holbrook, etc. Mr. Holbrook testified appellant came in his store and bought some casings and a tube; that he did not remember exactly, as

his son waited on him; that the bill amounted to $15.25. Dawson handed him this check. "My son called to me and said: 'Papa, what about it?' I said, 'Who is the check on?' and he said, 'Lee Fowler.' I did not know Fowler's ability, and do not know how he stands financially. I turned to Mr. Dawson and asked him if the check was all right, and he said, 'Yes, sir; it is all right; it is good.' I had just had trouble about a forged check, and it all happened the same day." Further testifying, Holbrook says: "When Dawson handed me the check he did not say anything about it being all right,—'that he had paid the money on it.' Dawson signed the check on the back in my presence. I have never sent the check to the First National Bank of Sweetwater, nor did I cause the bank to send it. I asked the First National Bank here to send it but they did not do so. I turned it over to the authorities here and they have had it ever since. So far as I know the check has never been presented to the First National Bank of Sweetwater, or the First National Sweetwater Bank, for payment on the signature of Lee Fowler, or on the endorsement of P. N. Dawson. The bank has not had a chance to pay it if presented, so far as I know. I do not think Mr. Dawson said anything to me to the effect that the check would be paid when presented for payment. Mr. Dawson did not say anything about Lee Fowler having sufficient money in the bank on which the check was drawn to make payment." This constitutes variance between averments in information and the facts.

So it will be seen this allegation in the information was disproved by the State's witness Holbrook, to whom all the representations were made, if made by appellant. This is one of the discrepancies that was shown in the trial of this case. Appellant testified that he told Mr. Holbrook the check was all right; he had paid the money on it; and the evidence seems to be uncontroverted by those who knew about the transaction, that the check was given to appellant by Fowler in payment of the $28.50 appellant had loaned him. The defendant testifying with reference to this check, stated that the check if presented at Sweetwater bank would be paid. The money was placed there by appellant soon after this transaction. In fact, funds were placed there in time for this check to have been taken up had it gone there for payment. This seems not to have been controverted.

Now, to restate the general case: Fowler gave appellant a check for .$28.50 for the money appellant had loaned him. Appellant bought goods from Holbrook and gave the check in payment, receiving $13.25 in money above what the goods cost, at the time endorsing the check. Fowler, therefore, was the maker and appellant the endorser of that check. Appellant testifies that money had been placed in the bank to meet this check had it been sent there for collection, and in ample time to have been ready to meet its payment upon its arrival at the bank. The statute provides that anyone who draws a check or draft or order, with intent to defraud, without having money in the bank on whom the check or order is drawn or given, would be guilty of swindling. But this would not be true if at the time when he gives

the check, draft or order, in the ordinary course of business such check
or order would be paid, provided he had sufficient funds to pay it, and
no good reason to believe that such check, draft or order would not be
paid.   In other words, if the maker of a draft, check or order has no
sufficient funds to meet the obligation, he would be guilty unless he
believed he had the funds or had good reason to believe that the funds
would be on hand to meet the check.   Lee Fowler testified that he had
no funds in the bank at the time, but in the ordinary course of busi-
ness with that bank he believed it would be paid, basing this largely
upon the statement that he had in the possession of that bank collat-
erals, among other things, a note.   It will be noticed the statute refers
to the maker or drawer and not to the endorser; but the statute is
broad enough doubtless to cover the endorser if the endorser is a party
to the fraud by connivance or agreement or conspiracy, but there is
no pretense, as we understand this record, that the defendant was a
party to any fraud on the part of Fowler, if it was fraudulent on
Fowler's part, to swindle anybody by drawing a check on a bank in
which he had no funds, and it occurs to us under this record that if
anybody was attempted to be swindled, or in fact swindled, by giving
the order, it was the defendant; he is the man who paid the money and
got the check.   It would hardly be supposed that the defendant would
go into a conspiracy with Lee Fowler to swindle himself out of $28.50
by taking a check on a bank that had no funds in it.   As the endorser
of the check appellant became responsible for its payment in case he
was called upon.   Realizing that fact, he placed money in the bank at
Sweetwater to meet it upon its presentation, and he testifies that the
money was placed there in ample time to have met the amount of the
check had it been sent there.   The check has not yet been sent to the
bank for collection.   Under this testimony appellant should not have
been convicted.   These matters were presented in different ways, and
are properly before this court for revision.   Appellant's contentions
along this line should have been sustained.   There were quite a num-
ber of special instructions presented to the court submitting these mat-
ters, which were, except one, refused.

The court instructed the jury, among other things, as follows: "You
are charged that if the wife of defendant offered to pay the witness
T. F. Holbrook, after the defendant had been arrested in this cause,
that same would in no way effect the worthlessness or value of the
check for $28.50, on the 2nd day of February, 1916, as said term has
been hereinbefore defined."   This charge should not have been given,
under the facts of this case.   Appellant was an endorser; knew nothing
of the condition of Lee Fowler's standing at the Sweetwater bank.   He
took this check in payment of the $28.50 appellant let him have and
endorsed it, thereby becoming responsible for its payment   If at the
time, in the ordinary course of business such check, draft or order
would be presented to the drawee for payment, sufficient funds to pay
same were in the bank it would not be swindling.   If the drawer had
good reason to believe that such check, draft or order would be paid,

he was entitled to a charge instructing the jury to acquit him, and appellant being the endorser and responsible, and not shown to have been in a conspiracy to defraud anyone, this charge presented a phase of the law which was materially erroneous and eliminated theory of appellant's honesty in the transaction. This is especially true in view of the fact that another bill of exceptions shows that the testimony of the wife, upon which this charge was predicated, was not permitted to go to the jury, to which defendant reserved exception. Appellant had a right to pay it; was legally bound to pay it. He endorsed the obligation, and if it had been presented at the bank in the ordinary course of business and money was on deposit there to meet it, defendant certainly could not have been guilty of swindling. He was only responsible as an endorser. He had not given the check. So from any viewpoint we take in this case, this conviction ought not to have been permitted. It is not intended here to say that an endorser might not be responsible criminally under this statute, but in order to do so it must be shown he was in some way criminally connected with the proposition to defraud and acted from that standpoint. It occurs to us that the testimony here excludes the idea that appellant was swindling anybody, and does manifest the proposition that appellant was the party that Lee Fowler was swindling. It is inconceivable to the mind of the writer how appellant, under these circumstances, would let Fowler have $28.50 of his own money out of his pocket and then accept a draft that he, appellant, knew was drawn on a bank in which Fowler had no funds. It stands as a fact uncontroverted, proved by all the testimony that appellant let Fowler have the money; it was his money. In payment he then took what the State contends was a worthless check on a bank in which Fowler had no money, and then was barred the right of paying a debt which he was legally bound to pay as endorser. This conviction ought not to be permitted to stand from any viewpoint. The judgment is reversed and remanded on the facts.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*