### OTIS SMITH v. THE STATE.

#### No. 3060. Decided March 25, 1914.

#### Rehearing denied April 15, 1914.

**1.—Rape—Evidence—Supporting Testimony.**

Where, upon trial of rape, the defendant denied a certain conversation with prosecutrix subsequent to the time that she had made a statement to her step-

mother that the defendant was the father of her child, there was no error in admitting in corroboration of prosecutrix's statement that she told her stepmother that the defendant was the author of her pregnancy, the same being rebuttal testimony.

**2.—Same—Evidence—Self-serving Evidence.**

Where, upon trial of rape, the defendant himself testified that he had not fully determined that he was going to marry the prosecutrix subsequent to the time he claims that his father's testimony would relate, there was no error in refusing testimony that defendant told his father he was going to marry prosecutrix, as tending to explain his association with her.

**3.—Same—Continuance—Bill of Exceptions.**

In the absence of a bill of exceptions, the overruling of an application for a continuance can not be considered on appeal.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence was sufficient to sustain a conviction, there was no error.

**5.—Same—Other Acts of Intercourse—Charge of Court.**

Where, upon trial of rape, there was evidence of other acts of sexual intercourse, but the court confined the evidence to the act upon which the conviction was based, there was no error.

Appeal from the District Court of Collin. Tried below before the Hon. F. E. Wilcox, Special Judge.

Appeal from a conviction of rape upon a female under the age of consent; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Wallace Hughston,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted in the District Court of Collin County under an indictment charging him with the rape of Birdie May Walker, a girl under the age of fifteen years who was not his wife, said rape being alleged to have been by her consent.

Appellant presents his complaints in four bills of exceptions, Nos. 2 to 5, inclusive, bill No. 1 being omitted from the record, and in other assignments in his amended motion for a new trial.

Bill No. 3 insists that when Mrs. H. C. Walker, stepmother of the alleged injured female, was testifying in behalf of the State, she was permitted over the objection of appellant to state that Birdie May Walker had told her, the witness, that Otis Smith, appellant, was the author of her pregnancy, that this statement was made to her as soon as it had been discovered that the said Birdie May Walker was pregnant and knowledge of this fact had been brought home to her. The contention was that this testimony was immaterial and irrelevant, incompetent, highly prejudicial. The court qualified this bill as follows: "This bill is given with this qualification: Before this testimony was offered defendant had testified that prosecutrix called him one day as he was passing her house and

told him that there was a tale out on him and her and that she was knocked up (meaning that she was pregnant with child), and that she further told him that the child was not his. The evidence further showed that this conversation between prosecutrix and defendant was subsequent to the time that prosecutrix had made the statement to her stepmother that the defendant was the father of her child, complained of in the above bill, and the testimony complained of in the bill was offered and admitted to corroborate prosecutrix, defendant having testified to a contradictory statement by her." This record discloses that the testimony of Mrs. Walker was in rebuttal, and this court had repeatedly held that where the testimony of a witness for the State has been attacked by showing that said witness made contradictory statements to that which the witness had given upon the trial, then the State was permitted to show that the witness had made statements consistent with the testimony he was giving upon trial prior to the alleged statement testified to by the impeaching witness. Branch's Crim. Law, sec. 874.

Bill No. 2 complains of the testimony of Birdie May Walker, the prosecutrix, to the effect that she had told her stepmother, Mrs. H. C. Walker, when it was first discovered that she was pregnant, that the appellant, Otis Smith, was the father of her child. The same may be said of this bill as has been said of bill No. 3 and it is unnecessary to further discuss it.

Bill No. 4 insists that as after Birdie May Walker had testified that the defendant had had intercourse with her in September or about that time in 1912, and that he had promised to marry her but that he had refused in the winter or spring of 1913 to carry out his promise, that when the defendant offered to prove by his father, M. R. Smith, that he told his father in the fall of 1912 that he was going to marry the prosecuting witness and that he had made arrangements to make a crop for the year 1913, he should have been permitted to do so, as tending to explain his association with the girl. The State objected to this testimony on the ground that it was hearsay and self-serving, was no part of the res gestae, was immaterial and irrelevant to any issue in the cause, shed no light on the case, and constituted no defense. The court sustained the State's objection. Appellant insists that had the witness been permitted to testify he would have testified that his son had made the statement to him as above set out, had tried to rent a farm, etc. There is no conceivable merit in this bill under the evidence in this case. The witness Birdie May Walker had testified, as stated in this bill, that after she had found out that she was pregnant, she called the appellant by her house, informed him of her pregnancy, and asked him to marry her, and that he flatly refused to do so, saying that it was not his child. The appellant took the stand in his own behalf and testified substantially as did the witness Birdie May Walker. There was no dispute about this proposition, and appellant himself testified on the trial that they were engaged to be married, and said: "The next time I went with her she discussed our plan about living together and being married, and about

how happy we would be. She seemed to be trusting in me and loved. I thought she loved me—I knew she loved me. She never went with anybody else during all that time that I was going with her but I don't say that I stopped them. I was the fair-haired boy that was playing the favorite and they quit. We were engaged and she put her whole trust in me so far as I know. Nobody else was allowed to go Sunday nights but me. I don't know whether I was five or six years older than she was or not but I am twenty years of age, and if she is but fifteen years old I am five years older than she is. I am a boy with a pretty smooth tongue and talk pretty glib, ready for an answer for anything that comes along. From October till February nobody else so far as I know ever went with her. She did not tell me all of her little secrets nor tell me everything she knew. It was very seldom that she ever told me anything that way. I gave her a ring, but it was not an engagement ring though I was engaged at the time I gave it to her. I did not give the ring to her at all—she pulled it off of my finger and would not let me have it back, I never gave her the ring. I did not give her an engagement ring because I didn't have any. I did not let that go as an engagement ring, and I never thought anything more about it. That engagement was not impressing me much at that time. I did not mean much by it. I just engaged myself to her without any kissing or loving or hugging—just a sort of idle passing whim. That is the reason I told her I would have to study it over. I didn't know really whether I was going to marry her or not—I had not fully made up my mind that I was. That was when we were engaged but I was allowing her to believe it. I did not know that she believed it at that time but after we kept on keeping company I learned that she did. It seemed to me that her whole soul was wrapped up in me. I knew she was a little school girl and went to school with short dresses. I came back to Frisco on the 19th of December. I had been up to Fannin County at Bonham—I went about the 12th or 15th of November and stayed a month or a little over. During that time she wrote me and her letters showed what she thought of me. I came back just before Christmas and spent Christmas and on up until February. I had not fully determined on up till that time that I was going to marry her." Herein it is seen that he himself testified that subsequent to the time he claims that his father's testimony would relate, "I had not fully determined that I was going to marry her."

Bill No. 5 presents substantially the same proposition as does bill No. 4, and it is unnecessary to discuss it.

In his amended motion for a new trial appellant insists that the court erred in overruling his application for a continuance as shown by his bill of exceptions No. 1. There is no such bill in the record, and in the absence of a bill of exceptions the matter sought to be presented can not be considered by this court.

While there is a sharp conflict in the testimony, yet the State's evidence makes a case, and this ground of the motion is without merit.

The remaining assignments in appellant's amended motion for a new

trial complain of the action of the court in refusing to give special charges requested by appellant. There is no merit in any of these contentions. The charge of the court, together with the special charges, fully covered every phase of the case. While there was evidence of more than one act of intercourse, the court instructed the jury: "The defendant is on trial alone for an act of sexual intercourse alleged to have occurred between defendant and Birdie May Walker at a straw stack in her father's pasture near Frisco, Texas, about the first part of September, 1912, and you can not convict defendant for an act of intercourse on any other occasion than the one for which he is on trial even if you should believe from the evidence beyond a reasonable doubt that the defendant was guilty of acts of sexual intercourse with Birdie May Walker on other occasions than the occasion for which he is on trial. And if from the evidence you have a reasonable doubt whether or not defendant had sexual intercourse with said Birdie May Walker at a straw stack in her father's pasture near Frisco, Texas, about the first part of September, 1912, then you will find the defendant not guilty."

The judgment is affirmed.

*Affirmed.*

[Rehearing denied April 15, 1914.—Reporter.]