**2. CRIMINAL LAW (§ 982*)—SUSPENSION OF SENTENCE—POWER OF COURT.**

Under the statute relative to suspending sentence, the question of suspending sentence is for the jury in determining the question of punishment, and, where the jury fails or refuses to suspend sentence, it cannot be suspended, though they find that accused has not previously violated any law.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2500, 2501; Dec. Dig. § 982.*]

Appeal from District Court, Montague County; R. H. Buck, Judge.

Robert Cook was convicted of manslaughter, and he appeals. Affirmed.

W. E. Benson, of Sunset, H. F. Weldon, of Bowie, and J. M. Chambers, of Ft. Worth, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, J. Appellant was convicted of manslaughter; his punishment being assessed at two years' confinement in the penitentiary.

[1, 2] The question of suspension of sentence was passed on under submission by the court to the jury. The jury found that appellant had not heretofore violated the law, etc., but failed or refused to suspend his sentence. That is the only question presented for review. It may be said it is presented from two viewpoints: First, that the law is unconstitutional; and, second, that, if not, then the law should be so construed that, in all cases where the jury find the defendant has not heretofore violated any laws of his country, the suspension will follow as a matter of law. The constitutionality of the law has been passed on in Baker v. State, 158 S. W. 998, in an opinion by Judge Harper, and that opinion has been followed. In Roberts v. State, 158 S. W. 1003, in an opinion by Judge Prendergast, it was held that it was only within the province of the jury to say whether or not the sentence should be suspended; in other words, it was a matter to be determined as a part of the punishment or suspension of punishment to be ascertained and determined only by the jury. That case has been followed in other cases. On the two questions, see Baker v. State, supra; Roberts v. State, supra; Potter v. State, 159 S. W. 846; Monroe v. State, 157 S. W. 155. It is deemed unnecessary to review the questions.

The judgment is affirmed.

---

SMITH v. STATE.

(Court of Criminal Appeals of Texas. March 25, 1914. Rehearing Denied April 15, 1914.)

**1. WITNESSES (§ 395*)—IMPEACHMENT—CORROBORATION.**

Where a witness for the state was impeached by proof that he had made statements contradictory to his testimony, the state could show that the witness had made statements consistent with his testimony prior to the alleged contradictory statements.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1260; Dec. Dig. § 395.*]

**2. CRIMINAL LAW (§ 1170*)—HARMLESS ERROR—ERRONEOUS EXCLUSION OF EVIDENCE.**

Where, on a trial for statutory rape, prosecutrix testified that she informed accused of her pregnancy, and asked him to marry her, and that he refused, and accused testified that up to a designated time he had not determined that he would marry her, the exclusion of evidence that prior to that time he had informed his father of his intention to marry prosecutrix, and had made arrangements so to do, offered to explain his association with prosecutrix, was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3145–3153; Dec. Dig. § 1170.*]

**3. CRIMINAL LAW (§ 1090*)—RULINGS ON APPLICATION FOR DISCONTINUANCE—BILL OF EXCEPTIONS.**

Denial of a continuance is not reviewable, in the absence of a bill of exceptions.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2653, 2789, 2803–2822, 2825–2827, 2927, 2928, 2948, 3204; Dec. Dig. § 1090.*]

**4. CRIMINAL LAW (§ 1159*)—VERDICT—CONCLUSIVENESS.**

A verdict on conflicting evidence, and supported by evidence, if believed, will not be disturbed on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074–3083; Dec. Dig. § 1159.*]

Appeal from District Court, Collin County; F. E. Wilcox, Special Judge.

Otis Smith was convicted of statutory rape, and he appeals. Affirmed.

Wallace Hughston, of McKinney, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted in the district court of Collin county under an indictment charging him with the rape of Birdie May Walker, a girl under the age of 15 years, who was not his wife; said rape being alleged to have been by her consent.

Appellant presents his complaints in four bills of exceptions, Nos. 2 to 5, inclusive; bill No. 1 being omitted from the record, and in other assignments in his amended motion for a new trial.

[1] Bill No. 3 insists that when Mrs. H. C. Walker, stepmother of the alleged injured female, was testifying in behalf of the state, she was permitted, over the objection of appellant, to state that Birdie May Walker had told her, the witness, that Otis Smith, appellant, was the author of her pregnancy, that this statement was made to her as soon as it had been discovered that the said Birdie May Walker was pregnant and knowledge of this fact had been brought home to her. The contention was that this testimony was immaterial and irrelevant, incompetent, highly prejudicial. The court qualified this bill as follows: "This bill is given with this qualification: Before this testimony was offered defendant had testified that prosecutrix call-

ed him one day, as he was passing her house, and told him that there was a tale out on him and her, and that she was knocked up [meaning that she was pregnant with child], and that she further told him that the child was not his. The evidence further showed that this conversation between prosecutrix and defendant was subsequent to the time that prosecutrix had made the statement to her stepmother that the defendant was the father of her child, complained of in the above bill, and the testimony complained of in the bill was offered and admitted to corroborate prosecutrix, defendant having testified to a contradictory statement by her." This record discloses that the testimony of Mrs. Walker was in rebuttal, and this court had repeatedly held that where the testimony of a witness for the state has been attacked by showing that said witness made contradictory statements to that which the witness had given upon the trial, then the state was permitted to show that the witness had made statements consistent with the testimony he was giving upon trial prior to the alleged statement testified to by the impeaching witness. Branch's Crim. Law, § 874.

[2] Bill No. 2 complains of the testimony of Birdie May Walker, the prosecutrix, to the effect that she had told her stepmother, Mrs. H. C. Walker, when it was first discovered that she was pregnant, that the appellant, Otis Smith, was the father of her child. The same may be said of this bill as has been said of bill No. 3, and it is unnecessary to further discuss it.

Bill No. 4 insists that, as after Birdie May Walker had testified that the defendant had had intercourse with her in September, or about that time, in 1912, and that he had promised to marry her, but that he had refused in the winter or spring of 1913 to carry out his promise, when the defendant offered to prove by his father, M. R. Smith, that he told his father, in the fall of 1912, that he was going to marry the prosecuting witness, and that he had made arrangements to make a crop for the year 1913, he should have been permitted to do so, as tending to explain his association with the girl. The state objected to this testimony on the ground that it was hearsay and self-serving, was no part of the res gestæ, was immaterial and irrelevant to any issue in the cause, shed no light on the case, and constituted no defense. The court sustained the state's objection. Appellant insists that had the witness been permitted to testify, he would have testified that his son had made the statement to him as above set out, had tried to rent a farm, etc. There is no conceivable merit in this bill under the evidence in this case. The witness Birdie May Walker had testified, as stated in this bill, that after she had found out that she was pregnant, she called the appellant by her house, informed him of her pregnancy, and asked him to marry her, and

that he flatly refused to do so, saying that it was not his child. The appellant took the stand in his own behalf, and testified substantially as did the witness Birdie May Walker. There was no dispute about this proposition, and appellant himself testified on the trial that they were engaged to be married, and said: "The next time I went with her she discussed our plan about living together and being married, and about how happy we would be. She seemed to be trusting in me and loved. I thought she loved me —I knew she loved me. She never went with anybody else during all that time that I was going with her, but I don't say that I stopped them. I was the fair-haired boy that was playing the favorite and they quit. We were engaged, and she put her whole trust in me so far as I know. Nobody else was allowed to go Sunday nights but me. I don't know whether I was five or six years older than she was or not, but I am 20 years of age, and if she is but 15 years old I am 5 years older than she is. I am a boy with a pretty smooth tongue and talk pretty glib, ready for an answer for anything that comes along. From October till February nobody else, so far as I know, ever went with her. She did not tell me all of her little secrets, nor tell me everything she knew. It was very seldom that she ever told me anything that way. I gave her a ring, but it was not an engagement ring, though I was engaged at the time I gave it to her. I did not give the ring to her at all—she pulled it off of my finger and would not let me have it back, I never gave her the ring. I did not give her an engagement ring because I didn't have any. I did not let that go as an engagement ring, and I never thought anything more about it. That engagement was not impressing me much at that time. I did not mean much by it. I just engaged myself to her without any kissing or loving or hugging— just a sort of idle passing whim. That is the reason I told her I would have to study it over. I didn't know really whether I was going to marry her or not—I had not fully made up my mind that I was. That was when we were engaged, but I was allowing her to believe it. I did not know that she believed it at that time, but after we kept on keeping company I learned that she did. It seemed to me that her whole soul was wrapped up in me. I knew she was a little schoolgirl and went to school, with short dresses. I came back to Frisco on the 19th of December. I had been up to Fannin county at Bonham—I went about the 12th or 15th of November and stayed a month or a little over. During that time she wrote me, and her letters showed what she thought of me. I came back just before Christmas, and spent Christmas and on up until February. I had not fully determined on up till that time that I was going to marry her." Herein it is seen that he himself testified that subse-

quent to the time he claims that his father's testimony would relate, "I had not fully determined that I was going to marry her."

Bill No. 5 presents substantially the same proposition as does bill No. 4, and it is unnecessary to discuss it.

[3] In his amended motion for a new trial appellant insists that the court erred in overruling his application for a continuance, as shown by his bill of exceptions No. 1. There is no such bill, in the record, and, in the absence of a bill of exceptions, the matter sought to be presented cannot be considered by this court.

[4] While there is a sharp conflict in the testimony, yet the state's evidence makes a case, and this ground of the motion is without merit.

The remaining assignments in appellant's amended motion for a new trial complain of the action of the court in refusing to give special charges requested by appellant. There is no merit in any of these contentions. The charge of the court, together with the special charges, fully covered every phase of the case. While there was evidence of more than one act of intercourse, the court instructed the jury: "The defendant is on trial alone for an act of sexual intercourse alleged to have occurred between defendant and Birdie May Walker at a straw stack in her father's pasture near Frisco, Tex., about the first part of September, 1912, and you cannot convict defendant for an act of intercourse on any other occasion that the one for which he is on trial, even if you should believe from the evidence beyond a reasonable doubt that the defendant was guilty of acts of sexual intercourse with Birdie May Walker on other occasions than the occasion for which he is on trial. And if from the evidence you have a reasonable doubt whether or not defendant had sexual intercourse with said Birdie May Walker at a straw stack in her father's pasture near Frisco, Tex., about the first part of September, 1912, then you will find the defendant not guilty."

The judgment is affirmed.