## D. D. THOMAS v. THE STATE.

No. 4844. Decided May 1, 1918.

### 1.—Theft of Goats—Sufficiency of the Evidence—Actual Taking.

Where, upon trial of theft of goats, the evidence was sufficient to support the conviction, and which justified the conclusion that the defendant was the original taker of the property, by his recent unexplained possession thereof, etc., there was no reversible error.

### 2.—Same—Bills of Exception—Rule Stated—Presumption.

The appellate court indulges the presumption that the rulings of the trial court are correct, and the burden is upon the appellant by some authentic record, to show facts overturning the presumption, and this is usually done by bills of exception.

### 3.—Same—Bills of Exception—Rule Stated—Bystanders' Bill.

It is the duty of the appellant to prepare his bill of exceptions and of the judge to allow it, or to file in lieu of it a bill prepared by him, and to controvert the bill thus prepared the appellant has the right to file a bill verified by bystanders. Following Exson v. State, 33 Texas Crim. Rep., 461.

### 4.—Same—Bills of Exception—Rule Stated—Presumption.

The court has no authority without the consent of appellant to qualify a bill prepared by him, but when a bill is found in the record with a qualification attached, the consent of the appellant will be presumed in the absence of an objection and exception to the qualifications authenticated and brought up in the records.

### 5.—Same—Charge of Court—Bill of Exceptions.

Where, upon trial of theft of goats, the trial court properly submitted the issues in his main charge together with the requested charges, there was no reversible error.

### 6.—Same—Representation by Counsel.

In view of the nature of the case and the presence of experienced counsel, etc., the refusal of the trial court to continue the case because of the absence of the leading counsel, does not present error. Following Monroe v. State, 56 Texas Crim. Rep., 244, and other cases.

### 7.—Same—Suspended Sentence.

The mere pleading of suspended sentence without proof to sustain it raises no issue for the jury.

**8.—Same—Evidence—Practice in District Court.**

The fact that the State was permitted to introduce some evidence after it had closed its case is in itself not an abuse of the discretion of the court; besides, the same character of evidence was introduced without objection.

**9.—Same—Argument of Counsel.**

Where defendant was allowed two and one-half hours to present his case to the jury no prejudicial error is shown.

**10.—Same—Argument of Counsel.**

Where defendant claimed that one of the State's counsel was drunk and that he used bitter and vindictive language, but the records showed that the attorney was reprimanded and the jury instructed not to consider the argument, there was no reversible error in the absence of special instructions.

**11.—Same—Conduct of District Attorney.**

While the conduct of the District Attorney in asking the jury whether they wanted anything else when they were brought into court and requested the reading of some testimony, was improper, yet it was not such a communication or conversation with the jury as is inhibited by the statute, and there was no reversible error.

**12.—Same—Defendant's Failure to Testify—Allusion to.**

Where the language used in the charge to disregard the remarks of State's counsel was not that which was used in the argument, but it appeared from the record that the language quoted in the bill of exceptions was legitimate argument and it did not appear as an allusion to defendant's failure to testify, there was no reversible error.

**13.—Same—Argument of Counsel.**

Where the argument of counsel for the State was withdrawn by requested charges, and was not obviously harmful, there was no reversible error.

Appeal from the District Court of Kimball. Tried below before the Hon. N. T. Stubbs.

Appeal from a conviction of theft of goats; penalty, two years in the penitentiary.

The opinion states the case.

*M. E. Blackburn, Martin & McDonald, W. C. Linden,* and *Joe H. H. Graham,* for appellant.—On question of introducing testimony after State closes: Anderson v. State, 14 Texas Crim. App., 49; Ballow v. State, 42 Texas Crim. Rep., 263; Richards v. State, 59 Texas Crim. Rep., 20, 127 S. W. Rep., 823; Canada v. State, 29 Texas Crim. App., 537.

On question of the insufficiency of the evidence: Yarborough v. State, 67 Texas Crim. Rep., 311, 151 S. W. Rep., 545; Rios v. State, 69 Texas Crim. Rep., 233, 153 S. W. Rep., 308.

On question of bills of exception: Hill v. State, 37 Texas Crim. Rep., 415; Slatter v. State, 61 id., 243; Perry v. State, 155 S. W. Rep., 261.

On question of improper argument: Smith v. State, 55 Texas Crim. Rep., 561; Grimes v. State, 64 Texas Crim. Rep., 64, 141 S. W. Rep., 261.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was convicted of the theft of twenty head of goats and his punishment assessed at two years confinement in the State penitentiary.

Prentice, the alleged owner of the stolen property, claimed to have missed twenty head of goats from his herd about the 20th day of July. They were marked and branded and he claimed to be able to recognize them and know them by reason of his intimate knowledge and contact with them and his long experience in the breeding and handling of stock of that kind. On the October following one Skaggs told Prentice over the telephone that he thought one of his goats was with the Skaggs herd. Prentice found in the herd and identified sixteen of his goats. He claims that his brand was on them but that another brand had been placed over it so as to change it. He also found that the mark had been changed, claiming that both mark and brand bore evidence by which the change could be identified. On one of the goats there were, according to his testimony, notches on the horns which were peculiar and which enabled him to identify the goat. Skaggs testified that he contracted with appellant for the purchase of 125 head of goats on the 24th day of July: that they were delivered to him by appellant a short time thereafter, appellant making personal delivery, driving the goats to the witness' pasture. He said that when he received the goats that some of them were branded and that he saw an old brand also. He learned from Prentice that some goats had been lost by him and informed Prentice that he had bought goats from Thomas, the appellant. That subsequently in handling his goats he found one with a spur brand (Prentice's brand) which had not been altered; that he then called Prentice on the telephone and informed him of the fact; that Prentice came and identified some of the goats which were afterward caught and examined and found to have the spur brand defaced by an X brand. He and Prentice both testified that on the first day they examined them they found eleven of these and on the next day five. He claimed that he had bought these goats from Thomas and paid him for them, and that he afterwards had a conversation with Thomas in which the latter reminded witness that they had been boys together and asked him to be easy. That if he would be easy he would get the money for him; but Thomas did not in the conversation say that he had gotten the goats from Prentice nor that he had stolen them. He said he was not going to deny that he had ninety-seven head of goats and that he would be able to prove that they were put in his herd to trap him; that he could not pay for them because his attorney advised him not to do so. There was some evidence that Prentice's goats were in a pasture with a goat-proof fence. There were gates in it, one of them in the direction of the pasture in which appellant's herd of goats were kept. Prentice claimed to have tried to track the goats when he discovered the loss and to have found in his pasture where a bunch of goats, apparently about twenty, passed and that they were accompanied by horse tracks and donkey tracks. These tracks were not otherwise identified nor was appellant's connection

with them established. They were in the direction of the gate which led to appellant's pasture but about a mile from the gate.

Another witness, Mrs. Florence Blardone, testified to the purchase of some goats from appellant in the latter part of July, 1916, describing them as a small bunch of especially fine goats: She said that she had seen appellant branding some goats, the number of which she could not tell; that appellant said he had sold them to Skaggs. That when appellant turned the goats out she remarked that he had not horn-painted all of them and that he said, no, that it was too hot, and that when she called his attention to the fact that he had not branded them all, he said, no, he branded those only on which the brand was not plain. She said he just branded a few and put an X brand on them. That she saw him drive the goats away; that a little boy was with him. That the boy was not riding at the time but that she had seen him ride a mare sometimes, and a donkey at others. She also testified that she had found among her herd three goats with the Prentice brand upon them unchanged. That appellant declared that he had sold and intended to deliver the goats to Roy Skaggs and that she saw him going in the direction of the Skaggs ranch; that he branded them early in the morning and started with them about 9 o'clock.

Appellant insists that the evidence is not sufficient to support the conviction, basing his claim mainly upon the contention that there is absence of evidence to show actual taking. Mr. Branch, in section 2463 of his Annotated Penal Code, lists the cases decided by this court touching the circumstances under which the theft may be inferred from the recent unexplained possession of stolen property. The possession in the present instance seems to meet these requirements. If the State's witnesses are to be believed, his possession of the goats that were sold to Skaggs was personal. Mrs. Blardone saw him branding them, driving them, and heard him declaring his intention to deliver them to Skaggs. Skaggs testified that he had an arrangement to buy them and some time on the morning on which they were delivered met appellant with them. The possession was recent, it appearing that Prentice had counted his goats a short time before he missed them about the 20th of July and that appellant had possession of the goats which he delivered to Skaggs about the 24th or 26th of July. His possession was not explained. It was a conscious assertion of the property right in that he actually sold and delivered them to Skaggs. Skaggs retained them in his possession until they were identified by Prentice some three and one-half months later. The evidence is to the effect that when examined by Prentice and others at the time he identified the goats in Skaggs' possession the spur brand bore evidence of having been converted into an X brand, and Mrs. Blardone testified to circumstances indicating that this change was made by appellant before he delivered the goats to Skaggs. We can not agree with appellant that the evidence was so lacking in cogency as to fail to show circumstances which justified the conclusion of the jury that he was the original taker of the property.

Appellant presented to the trial judge sixteen bills of exception. To nine of these bills the court attached qualifications. In lieu of two of them he prepared and filed his own bills. Appellant does not controvert the bills prepared and filed by the trial judge by the production of by-stander's bills. He objected to the qualifications attached and this objection is brought forward in bills of exception duly certified. The appellate court on appeals indulges the presumption that the rulings of the trial court are correct and the burden is upon the appellant, by some authenticated record, to show facts overturning the presumption. This is usually done by bills of exception. The rules of practice on the subject are quite accurately stated in Exon v. State, 33 Texas Crim. Rep., 461. Briefly, they are as follows: It is the duty of the appellant to prepare his bill of exceptions and of the judge to allow it or· to file in lieu of it a bill prepared by him. To controvert the bill thus prepared the appellant has the right to file a bill verified by bystanders. The court has no authority, without the consent of appellant, to qualify a bill prepared by him, but when a bill is found in the record with a qualification attached the consent of the appellant will be presumed in the absence of· an objection and exception to the qualification authenticated and brought up in the record. When a bill appears in the record qualified and it also appears that it was done over appellant's objection, the qualification may be disregarded and the bill considered approved as prepared by appellant. If the qualification is, in substance, a rewriting of the bill of exceptions it may be considered and treated as the court's bill.

Most of the unqualified bills appearing in this record relate to exceptions to the charge of the court or the refusal of special charges. They present no new or important questions and without discussing them in detail we are of opinion that the court's charge, together with the special charges given at the request of appellant, fairly and accurately present the issues raised.

In view of the nature of the case and the presence of experienced counsel selected by the appellant familiar with the case and who are shown by the record to have conducted the case in a skillful manner, the refusal of the trial court to continue the case because of the absence of leading counsel does not show an abuse of discretion. Monroe v. State, 56 Texas Crim. Rep., 244; Mason v. State, 81 S. W. Rep., 718; Coleman v. State, 43 Texas Crim. Rep., 15; Weaver v. State, 34 Texas Crim. Rep., 282; Stockholm v. State, 24 Texas Crim. App., 598; Walker v. State, 13 Texas Crim. App., 618; Boothe v. State, 4 Texas Crim. App., 202.

Two bills complain of the refusal of the court to submit to the jury the issue of suspended sentence which was pleaded but upon which no proof was offered. This pleading in the absence of evidence raised no issue for the jury.

The second bill of exception complaining of the fact that the State was permitted to introduce some evidence after it closed its case does

not contain any facts indicating that there was an abuse of discretion by the court given by article 718, C. C. P., to permit the introduction of evidence before the close of the argument. The other criticisms in the bill refer to matters that are not set out or specifically referred to in the statement of facts. Our examination of the latter has disclosed no testimony subject to criticism. The evidence of the witness was concerning the facts transpiring at the time that Prentice identified the goats in the possession of Skaggs and was in substance the same evidence that was given by both Prentice and Skaggs without objection. Appellant is not in position to complain of the introduction of the evidence of this witness, it being the same as introduced through other witnesses without objection.

Bill No. 10 complains that one and one-half hours of the two and a half allowed to the State for argument was consumed in the closing argument. We learn from the bill that the appellant was allowed two and one-half hours to present the case from appellant's standpoint and we find no facts in the bill as prepared by appellant which show error prejudicial to appellant.

The eleventh bill relates also to the argument, claiming in general terms that one of the State's attorneys was drunk and that he used bitter, vindictive, vitriolic, and profane language, none of which is set out in detail except the fact that he referred to appellant as a thief, "a two-legged wolf," and asked the jury that if any member did not believe the defendant guilty to stand on their heads. This language was manifestly undignified and improper. It was not, we think, so obviously prejudicial that its effect might not have been withdrawn by special charge. It appears from the same bill and from the record that the trial court instructed the jury, at appellant's request, not to consider other remarks made by the same attorney, and it appears from the bill that during the argument mentioned the court verbally reprimanded the attorney at the time. The court was not requested to withdraw the remarks by special charge, in the absence of which, we think, there is no reversible error shown by the bill.

Appellant's twelfth bill of exception was not allowed by the court, but in lieu of it one was prepared which shows that during their deliberations the jury came into court and requested the reading of some testimony. Before it was read by the stenographer one of the attorneys asked the foreman of the jury whether the request was made officially or not. After the evidence on direct examination was read the stenographer stated that the cross-examination was next. The attorney for the State asked the foreman whether they wanted the cross-examination or whether there was anything else they wanted, to which the foreman replied, "No." The trial judge at the time reprimanded the attorney for the State and ordered him to take his seat. This was in the presence of the jury, the appellant offering no objection at the time. This, we think, was not such a conversation with the jury as inhibited by the statute, which declares that the jury in a criminal case shall not hold

communication with others except in the presence of the court. The conduct was not proper but the reprimand by the judge would seem to have been sufficient. Just in what way the things were done by the attorney for the State could have prejudiced the appellant's rights is not clear. It might have been to his advantage to have had the cross-examination of the witness read. He does not appear to have requested that it be done nor suggested to the court that anything further be done.

Appellant's bill No. 13 was not allowed but was substituted by one prepared by the court from which it appears that the appellant's attorney commented upon the failure of the State to prove that one of the animals that was supposed to have followed the missing goats as disclosed by the tracks was a donkey and not a small horse or colt. Replying to which attorney for the State said: "Why did you not put your own boy, Dave Thomas, on the stand and prove he did not own a donkey?" Objection was made and sustained to this, and the appellant prepared and the court gave a special charge telling the jury to disregard the remark of counsel, which in the special charge was stated as follows: "Why don't you put your own boy, Dave Thomas, on the stand and prove he did not own a donkey?" Counsel insists that the record thus presented shows comment upon the failure of the appellant to testify. It appears from the testimony that appellant had a boy who was with him at the time he drove or started to drive the goats to Skaggs' pasture, and Mrs. Blardone said that the boy at times rode a donkey. The court in the bill says that the language used in the charge was not that which was used in the argument, but that the language used was that quoted in the bill, and that in signing the charge he overlooked the fact that there was a difference between the language used by the attorney in his argument and that used in the special charge. The language quoted in the bill occurs to us to have been legitimate argument under the record, and considering the record the language used in the special charge given at the request of appellant does not, we think, necessarily refer to appellant's failure to testify. He appears to have been a man, not a boy, and to have had a boy who was with him in part of the transaction and who would have known whether he had a donkey or not and whether the State's testimony that he did have and sometimes rode one, was true.

Bills Nos. 14 and 15 relate to an argument of counsel which was withdrawn by special charges and which we regard as such as susceptible to withdrawal in that manner. The authorities are uniform that it is not every improper remark that requires or justifies a reversal, but when withdrawn it is those only which are so obviously harmful that withdrawal by the court will not cure the injury produced by them. Branch's Ann. P. C., secs. 361-362.

The judgment is affirmed.

*Affirmed.*