SAM MOORE V. THE STATE.

No. 5787. Decided June 25, 1920.

1.—Robbery—Sufficiency of the Evidence.

Where, upon trial of robbery, the evidence was sufficient to sustain the conviction, although largely circumstantial, there was no reversible error.

2.—Same—Evidence—Comparison of Tracks—Charge of Court—Arrest.

The contention based upon the proposition that defendant being under arrest at the time that he made the footprints, which were used as comparison, the matter was inhibited by the statute which excludes the acts and declarations of the accused while under arrest unless warning is previously given, is untenable and not within the scope of the statute mentioned, the defendant having made such tracks without objection, and there was, therefore, no reversible error to exclude such evidence. Following Walker v. State, 7 Texas Crim. Rep., 264, and other cases.

3.—Same—Evidence—Tracks—Comparison—Custody—Warrant of Arrest.

The comparison of the shoes obtained from defendant and the tracks voluntarily made by him, being otherwise material, was not rendered inadmissible by reason of the fact that he was held in custody of an officer who had not first obtained a warrant for his arrest.

### 4.—Same—Footprints—Evidence—Contradicting Witness.

Where the defendant testified that in making the footprints, which were used for comparison, he did not make them with his barefoot, but that he had on his socks, there was no error in admitting evidence contradicting this statement.

### 5.—Same—Circumstantial Evidence—Charge of Court—Requested Charge.

Where upon trial of robbery the evidence was circumstantial, and the court gave a full and accurate charge on the law of circumstantial evidence, there was no error in the court's refusal to submit requested charges on the same subject.

### 6.—Same—Bills of Exception—Qualifications—Practice on Appeal.

The trial judge has no right to qualify the defendant's bill of exceptions over his objection, and the bill is therefore considered. However, it is not, in fact, qualified. But when a bill of exceptions is not acceptable to the trial judge the procedure is pointed out by statute and should be followed. Following Thomas v. State, 204 S. W. Rep., 999.

### 7.—Same—Rehearing—Footprints—Comparison—Rule Stated.

The rule is that while the accused cannot be compelled to place his foot in a shoe track found in the vicinity of the crime, and even his refusal to do so cannot be proved against him, it may always be proved that the accused voluntarily went to the *locus in quo* and placed his foot in footprints found there, and that his foot fitted the footprints perfectly. Following Walker v. State, 7 Texas Crim. App., 264, and other cases.

Appeal from the District Court of Fayette. Tried below before the Honorable M. C. Jeffrey.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*John T. Duncan*, for appellant.—On question of comparison of footprints: Turman v. State, 95 S. W. Rep., 533; Cooper v. State, 86 Alabama, 610; Davis v. State, 131 id., 10; Elder v. State, 143 Georgia, 363; Day v. State, 63 id., 667.

On question of illegal arrest and securing footprints: Wilson v. State, 47 S. W. Rep., 996. Wilson v. State, 51 id., 916; Ex parte Wilson, 47 S. W. Rep., 996.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, JUDGE.—The appeal is from a judgment condemning the appellant to confinement in the penitentiary for five years for the offense of robbery.

The reliance of the State is wholly upon circumstantial evidence. Mrs. Mary Scott, the injured party, a woman about 73 years of age, testified that about midnight on June 20 a negro man entered her

house, took her by the throat while she way lying on her bed, demanded her money, and put her in fear so that she got her purse and emptied the silver therein, about 90 cents, into the appellant's hand whereupon he left the premises. She, with her son, who seems to have been mentally deficient, went to the home of a neighbor, where they remained until daylight, and returning to the home in company with others discovered tracks. These tracks, as described by several witnesses, consisted of tracks of a man wearing shoes, near the corner of the house, and barefoot tracks leading toward the house and also coming out of the house. Mrs. Scott said that while working in her garden late in the evening she saw the appellant watching her from the house of McDuffy, about seventy-five yards distant; that an extremely heavy rain had fallen between dark and midnight, at which time it abated and later ceased. A short time before the robbery she had not been able to sleep, and had gotten up and made a light in the house, and was assaulted soon after she lay down again. Her assailant was a negro man and barefooted, and she claimed that while she was lying on her bed and he was choking her, she saw his face plainly during a flash of lightning, and, according to her best judgment, she identified the appellant as her assailant. The appellant is a negro man, and resided some 3 miles from West Point, where the offense took place, and was at the home of McDuffy on the evening preceding the incident, he claiming to have left McDuffy's home shortly after dark and walked to his own home, while it was raining. From McDuffy's testimony it appeared the appellant left his home, according to estimate, at about 9 o'clock. Both appellant and his wife claim that after reaching his home early in the night, he remained until morning.

The prints made by the shoes near the house were described as being made by shoes without heels, one of them apparently turned up at the toe, the right shoe having a worn place in the sole. The barefoot tracks were traced from the home of Mrs. Scott for some distance in the direction of the home of appellant, when they disappeared, and shoe-prints identical with those found near the house of Mrs. Scott were followed to the home of the appellant. This occurred in the morning immediately succeeding the offense; and at the home of the appellant there was found a pair of shoes bearing the peculiarities necessary to make the tracks mentioned, and coinciding with them in size. These shoes were when found wet and muddy, and were on the same day compared by inspection and measurement and by fitting into the tracks which were near the house of Mrs. Scott, and were found to correspond in all respects with the tracks, and to fit in them perfectly. The tracks about the premises were made in sandy ground, and the witnesses gave the opinion that they were made after the rain, and the character of the earth was described as such as to give and retain a good impression of the footprint.

During the forenoon of the day following the night of the offense, officers took charge of the appellant without a warrant, and while in their custody they caused him to go to the premises of Mrs. Scott and in that vicinity, and caused him to remove his shoes and make a barefoot track, and also to put his foot in the barefoot track which was made by the offender. His bare foot fitted in the track, and the track made by him corresponded by measurement with the dimensions of the track supposed to have been made during the night. It was shown that the shoes which were used belonged to the appellant, and had been worn by him on the night the offense took place. He, in his testimony and in his statement to the officers, disclaimed having been in the vicinity at the time the offense was committed, and claimed that in going from the premises of McDuffy he had taken a route materially different from that which was outlined by the tracks which were traced from the home of Mrs. Scott to that of appellant. An examination of the route which appellant claimed to have taken failed to disclose any tracks. It seems likely, from the evidence, however, that if tracks had been made by him early in the night, they would not have been discernible the next morning by reason of the heavy rain. The clothes worn by appellant on the night mentioned were found the next day, and were wet, including an overcoat which he had borrowed from McDuffy on leaving his house.

We find ourselves unable to concur in the correctness of the view expressed by the learned counsel for the appellant, that the circumstances are not of sufficient cogency to support the verdict. His presence at the scene is established without dispute. While the identification by the injured woman is not definite, her description of the offender, so far as she was able to give it, coincides with that of the appellant. His *alibi*, supported by his testimony and that of his wife is discredited by the undisputed fact, in that if he reached his home at 8 or 9 o'clock, the rain falling in torrents for several hours thereafter, before the offense was committed, would have obliterated the tracks on his own premises and leading from the path described by the tracks to his door. The fact that these tracks were definitely discernible is under the evidence a cogent circumstance to refute the theory of the appellant that he reached his home before the heavy rain had ceased, and tends strongly to support the theory of the state that he made the tracks about his home after the storm, as he did those at the premises of Mrs. Scott. The peculiarities of the footprints made by the shoes, and the exactness with which they correspond with the tracks made by the shoes worn by the appellant on the occasion, bring the case within a class in which footprints are regarded as a very high character of evidence of identification. See Burrell on Circumstantial Evidence, p. 267-8; Wills on Circumstantial Evidence, p. 237.

The appellant, by various methods, including special charges and motions to withdraw and exclude evidence, sought to have the testi-

mony to the effect that a comparison was made of the footprints of the appellant with those about the scene of the offense excluded. This contention was based upon the proposition that the appellant being under arrest at the time that he made the footprints which were used as comparison, the matter was inhibited by the statute which excludes the acts and declarations of the accused while under arrest unless warning is previously given. This theory has been passed on by this court several times, and held not within the scope of the statute mentioned. Walker v. State, 7 Texas Crim. App., 264; Pitts v. State, 132 S. W. Rep., 802; Branch's Crim. Law, sec 353. Appellant testified that he made the tracks which were used for comparison without objection. It is not a case in which the accused was compelled to make the footprints, but one in which it was voluntarily, and inhibited, so far as we are aware, by no rule of evidence. Underhill on Crim. Evidence, sec. 374, p. 646, from which we quote:

"Nor can the accused be compelled to place his foot in a shoetrack found in the vicinity of the crime. His refusal to do so can neither be proved against him nor commented on by counsel, while, generally, if he is forcibly compelled to do so, a witness, who was present at the comparison, cannot testify to the results. But it may always bs proved that the accused voluntarily went to the *locus in quo* and placed his foot in footprints found there and that his foot fitted the footprints perfectly."

The further point is made that the evidence should have been rejected because at the time the appellant made the footprints which were used for comparison, and at the time his shoes were secured. he was illegally detained, it being contended that the use of evidence obtained under those circumstances was in opposition to the Search and Seizure Clause of the Bill of Rights. The point was passed on in substance in the motion for rehearing in Rippey v. State, in which the point decided was that the State was not precluded from the use against the accused of the fruits of the crime of burglary by the fact that the stolen property was obtained by the officers from the dwelling of the accused without a search warrant, and in the absence of the accused. See Turner v. State, 136 American State Rep., 129; People v. Adams, 63 L. R. A., 406; Jones v. State, 86 Texas Crim. Rep., 214 S. W. Rep., 322. The comparison of the shoes obtained from appellant and the tracks voluntarily made by him being otherwise material were not rendered inadmissible by reason of the fact that he was held in custody of an officer who had not first obtained a warrant for his arrest.

The appellant testified that in making the footprints which were used for comparison, he did not make them with his barefoot, but he had on his sock. In our opinion, the introduction of proof contradicting this statement was proper.

So far as we are able to discern, the charge of the court on the law of circumstantial evidence was full and accurate, and there was no

error in refusing to supplement it by the special charge on the subject requested by the appellant. To have done so would have been an unnecessary repetition.

The trial judge had no right to qualify the appellant's bill of exceptions over his objection. We have, therefore, disregarded the explanation attached to the bill. We will say, however, that if considered the explanation fails to modify or change the effect of the bills as prepared by the appellant. The procedure, when the bill of exceptions prepared by the appellant is not acceptable to the trial judge, is pointed out by statute, and unless the appellant consents to the qualification the statute should be followed. See Thomas v. State, 83 Texas Crim. Rep., 325, 204 S. W. Rep., 999, and the authorities therein mentioned.

We discern no departure from the procedure harmful to the appellant, and under the facts proved are not warranted in overturning the verdict of the jury.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 25, 1920.

MORROW, JUDGE.—Responding to appellant's motion for rehearing and the earnest and forceful argument of his counsel thereon, we have carefully gone over the record in this case.

The point upon which stress is laid is that the act of the appellant in making footprints for comparison with those supposed to have been made by the offender, and in placing his bare foot in tracks found near the scene of the crime, was an infringement of the rule which makes one accused of crime immune from giving evidence against himself. The rule, as applicable to the particular subject in hand, is stated in the original opinion in the quotation from Underhill on Evidence. Soon after this court was organized, the question was presented upon testimony almost identical with that appearing in the record in the case before us. The court said:

"There is but a single bill of exceptions exhibited in the record, and this was saved to the admission in evidence of proof with regard to foot-tracks made by defendant in Justice Joiner's office whilst he was under arrest. Just after the discovery of Maj. Munroe's murder, some parties present commenced examiniing for any signs or evidence left by the perpetrator at the house and around the premises. Footprints were found in the house, at a window, and in the peach-orchard, which were measured by the witnesses, one of whom was George Grimes. The portion of his testimony which was objected to on the trial was as follows: 'I saw the same measure ap-

plied to a track in Judge Joiner's office at Bremond. Joiner made
the defendant make his track in the ashes and in sand in his office,
where a stove had been. The impression made was plain, and it was
about the same as tracks made in Munroe's house. The measure was
applied to the footprints in Joiner's officer, and it was the same in
every particular—fitted it exactly.'

"It is contended that the evidence was incompetent and inadmis-
sible, because it was evidence which defendant was compelled to make
and give against himself, in contravention of the tenth section of
the Bill of Rights, art. 1, of the Constitution, which declares that one
accused of crime shall not be compelled to give evidence against him-
self.

"This identical question was presented in the case of The State
v. Graham, 74 N. C., 646. RODMAN, J., delivering the opinion of the
court, says: 'The object of all evidence is to elicit the truth. Con-
fessions which are not voluntary, but are made either under the fear
of punishment if they are not made, or in the hope of escaping pun-
ishment if they are made, are not received as evidence, because ex-
perience shows that they are liable to be influenced by those motives,
and cannot be relied on as guides to the truth. But this objection
will not apply to evidence of the sort before us. No fears or hopes
of the prisoner could produce the resemblance of his track found in
the cornfield. The resemblance was a fact calculated to aid the jury,
and fit for their consideration.' After citing Best on Evidence, sec.
183, and other authorities, the learned judge proceeds to say further:
'If an officer who arrests one charged with an offense has no right to
make the prisoner show the contents of his pocket, how could the
broken knife or the fragment of paper corresponding with the wad-
ding have been found? If, when a prisoner is arrested for passing
counterfeit money, the contents of his pockets are secured from search,
how can it ever appear whether or not he has on his person a large
number of similar bills. which, if proved, is certainly evidence of
*scienter?* If an officer sees a pistol projecting from the pocket of a
prisoner arrested for a fresh murder, may he not take out the pistol
against the prisoner's consent, to see whether it appears to have been
recently discharged? Suppose it be a question as to the identity of
the prisoner, whether a person whom a witness says he saw commit
a murder, and the prisoner appears in court with a veil or a mask
over his face, may not the court order its removal in order that the
witness may say whether he was the person whom he saw commit the
crime?' . . . The conclusion reached is thus summoned up: 'We
agree in the opinion that when the prisoner, upon being required by
the officer to put his foot in the track, did so, the officer might prop-
erly testify as to the result of the comparison thus made. It is un-
necessary to say whether or not the officer might have compelled the
prisoner to have put his foot in the tracks, if he had persisted in not
doing so.' See this case of The State v. Graham, *supra,* also reported

in full in 1 Am. Cr. Rep. (Hawley), 182.'' Walker v. State, 7 Texas Crim. App., 264.

Upon facts in no sense distinguishable from those surrounding the appellant, this court has held similar evidence competent, and on many occasions expressly approved the case from which we have quoted. Thompson v. State, 45 Texas Crim. Rep., 192; Pitts v. State, 60 Texas Crim. Rep., 525; Myers v. State, 14 Texas Crim. App., 48; Guerrero v. State, 46 Texas Crim. Rep., 447. The rule approved in Walker's case, *supra,* has been expressly followed in other jurisdictions. State v. Graham, 116 La., 782; Thornton v. State, 117 Wis., 345, 98 Amer. State Rep., 924. The rule stated and applied in this case finds sanction in the text and in the cases in Wharton's Crim. Evidence, vol. 2, p. 1798.

Finding ourselves unable to concur in the views of appellant, and being of the opinion that the decision for which he contends is at variance with the rules of evidence, illustrated by numerous precedents in our own and other jurisdictions, we must decline to grant the motion for rehearing. It is accordingly overruled.

*Overruled.*