## MONROE STOKER v. THE STATE.

No. 14149.   Delivered April 29, 1931.
Rehearing Denied October 7, 1931.

The opinion states the case.

*Davidson, Blalock & Blalock,* of Marshall, and *T. W. Davidson,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, Judge.—The conviction is for murder and the punishment assessed at four years in the penitentiary.

The testimony showed that about the 26th day of December, 1929, Chesley Ollison was killed on a public road in Harrison county, Texas, about two miles north of Harlingen, near the residence of Sam Stoker. There had been a party and Christmas tree that night at the Sam Stoker residence attended by a large number of negroes. The appellant and the deceased were both negroes. As the party was breaking up and the crowd dispersing, a fight or some kind of commotion took place in the road some distance from the house of Sam Stoker and in the direction of Harlingen. A woman's voice was heard and several men ran down there. It was in the nighttime, but the headlights of an automobile seem to have given something of a vision of the parties. As to what started the fight and who the participants were, it appeared impossible to learn. The principal witnesses who testified about it were those who ran down there, including Wade Smith and Jessro Crockett. Upon their arrival they found a negro by the name of Cleve Smith and his wife and deceased, Chesley Ollison, and his wife coming from the direction where the disturbance had been heard. The deceased, Chesley Ollison, and his wife were in some kind of an argument, according to one of the witnesses. The deceased had a stick in his hand and his wife was begging him for his knife. No one saw the deceased pick up the stick. According to the witnesses for the state, the appellant, Monroe Stoker, appeared on the scene with a pistol, and shot the deceased down. No words were passed between them. After the shooting, the wife of deceased called out, "Don't shoot any more," and said that the witness Wade Smith did the shooting. The evidence showed that deceased said to the constable and to a physician and others that Wade Smith shot him. One of the state's witnesses, who was uncontradicted, stated that the deceased did not make the statement that he was shot by Wade Smith until after his wife made the statement and told him that Wade Smith had shot him. Wade Smith was arrested by the constable and put in jail, and later the appellant, Monroe Stoker, was also arrested and afterwards indicted by the grand jury for the killing.

The appellant did not testify in the case and neither did the deceased's wife. Appellant offered several witnesses who testified that the appellant had gone around the house into the back yard and was driving his wagon out the side gate into the front yard or space in front of the yard where the party occurred at the time of the shooting.

Bill of exception No. 1 complains of the court's action in permitting the witness Lynwood Little to testify to a statement made to him by the witness Jessro Crockett as to who shot deceased. This bill was qualified by the court as follows:

"After the state's witness, Jessro Crockett, had testified that the

defendant, Monroe Stoker, shot deceased, he was asked by defendant on cross-examination if he did not state to one Douglas Smith, Constable, shortly after the killing, that Wade Smith shot deceased. In answer to this question he stated that he did not. Thereafter the defendant called Constable Smith to the stand and he testified that the witness, Crockett, did in fact make the statement to him. Having been thus impeached, the court admitted the testimony complained of to show that the witness, Crockett, made statements similar to and in consonance with the testimony he was then giving. At the time the testimony was elicited no objection to same was made by the defendant, the court's attention being called to same for the first time during the cross-examination of the witness by a motion to exclude, which motion was overruled for the reason hereinabove stated."

Where a state's witness is attempted to be impeached by a showing that he made statements with reference to the transaction out of court different from and contradictory to his testimony delivered on the present trial, it is not error to permit the state to support the witness by showing that shortly after the transaction and before any motive or inducement existed to fabricate, he made statements of the matter similar to his testimony delivered on the trial. Branch's Ann. P. C., sec. 181; Bell v. State, 20 S. W., 362; Northcutt v. State, 70 Texas Crim. Rep., 577, 158 S. W., 1005; Smith v. State, 73 Texas Crim. Rep., 521, 165 S. W., 574. This bill, as qualified, was accepted without objection, and as qualified shows no reversible error.

Bill of exception No. 2 shows that while the witness Lynwood Little was testifying for the state he was asked on cross-examination by appellant the question, "Do you know of some trouble between Jessro and Monroe Stoker:" to which the witness answered, "Yes sir", and further, "Was bad feeling between them, were they enemies of each other?" to which the answer was, "They had a shooting scrape, Jessro shot at Monroe". On redirect examination the state's attorney asked said witness, "Shot at him about his wife," to which the witness answered, "Yes sir". The court qualified the bill as follows: "* * * the court was of the opinion that the state was entitled to explain the alleged assault, which the defendant had inquired about in the first instance, in order to explain the witness Crockett's conduct and attitude towards defendant and to remove any unfavorable impression as to the credibility of the witness Crockett which might have been created upon the minds of the jury by reason of the alleged assault. However, when objection was made, same was promptly sustained and the jury verbally instructed to consider the question asked and the answer elicited for no purpose whatever. Furthermore the court in the main charge instructed the jury to consider the testimony for no purpose."

If there was error in the admission of this testimony, under the cir-

cumstances we do not believe said testimony was so injurious to the rights of appellant as that the injury of its admission could not be cured by the instruction given not to consider it.

Bills of exception Nos. 3, 4 and 5 reflect the complaint of the remarks of the state's attorney in his closing argument to the jury. Each of the bills was qualified by the trial judge. In doing so he stated in some detail the facts in evidence which he regarded as sufficient predicate for the remarks of which complaint is made. The qualifications to the bills were accepted without protest, and as qualified the bills are not regarded as showing that state's counsel in his argument used language which would justify this court in overturning the verdict of conviction. There being no exception to the qualification of the bills, the presumption of their accuracy is conclusive upon appeal. See Texas Jur., vol. 4, sec. 194, and notes, including Thomas v. State, 83 Texas Crim. Rep., 325, and many other cases.

Bills of exception Nos. 6, 7, 8 and 9 each present for review the action of the trial court in refusing appellant's special requested instructions wherein he sought to have the law of self-defense and the defense of another submitted to the jury and will therefore be treated together. Each of the bills are qualified by the trial court, which qualifications show that there was no evidence raising the issue of self-defense or the defense of another. There were no exceptions or objections to said qualifications. Looking to the facts, it is believed that the trial court was clearly within his rights in refusing said special charges. Appellant introduced a number of witnesses who testified that he was in another and different place at the time the killing occurred. He introduced no testimony which we find in the record which tended to suggest that deceased had made any threats against him, nor did any witness testify that at the time the killing occurred that the deceased was making any assault upon him or any hostile demonstration towards him, nor do we believe that the evidence in this case raised the issue of the defense of another. It is true that one of the state's witnesses testified that deceased had a piece of wood in his hand and was standing near deceased's wife when the killing occurred, but there is no evidence in the record to show that deceased had threatened his wife or any other person; nor does it appear that he had or was at the time making any hostile demonstration towards her or any other person. The appellant himself did not testify. No witness testified that preceding the shooting of the deceased that appellant was either being attacked or about to be attacked by anybody, nor that the deceased was attacking or about to attack any person. The facts do not in our opinion raise the issue of self-defense of either himself or the defense of another, but on the contrary the testimony of the state conclusively showed an unprovoked shooting of the deceased by appellant.

The court charged the jury that if they believed from the evidence

that the witness Wade Smith shot and killed the deceased or if the evidence raised in their minds a reasonable doubt as to said fact, it would be their duty to acquit the appellant and say by their verdict not guilty. The court also charged on the defense of an alibi.

It is made to appear by exceptions to the court's main charge that the appellant objected to the court's definition of malice in his application of same to the facts. It is insisted that no malice is shown and therefore the court was in error in charging the jury that if they found that appellant was actuated by malice when he killed deceased, they should affix the penalty for a homicide under such circumstances. The indictment in this case charged that the appellant "did then and there unlawfully voluntarily and with malice aforethought kill Chesley Ollison". Having so charged in the indictment that it was done with malice aforethought, it was necessary for the court to define what was meant by malice aforethought. The court instructed the jury that in the event they found the appellant guilty of murder, if they did do so, in no event could the jury assess his punishment therefor at a greater penalty than confinement in the penitentiary for five years, unless the jury believed beyond a reasonable doubt and from all the facts and circumstances in evidence that the defendant in killing the said Chesley Olliso, if they believed he did, was prompted by and acted with malice aforethought, as that term had been defined to them in the charge. He also charged the jury that if they had a reasonable doubt as to whether the appellant was guilty of murder, as that term had been defined to them, that they would give him the benefit of said doubt and acquit him.

The existence or non-existence of malice, as well as the guilt or innocence of the appellant, are questions of fact for the determination of the jury. They alone can determine these issues under appropriate instructions from the court. Controverted issues of fact in this case were matters for the jury. The jury in their verdict determined them against the appellant.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The matters presented in the motion for rehearing are in substance identical with those considered and discussed by the court in the original opinion. A careful re-examination of the record in the light of the appellant's motion for rehearing leaves the court of the opinion that in concluding that the judgment should be affirmed the court was correct.

The motion for rehearing is overruled. · *Overruled.*