Opinion delivered June 11, 1887.

---

No. 5547.

## W. W. CHESTER *v.* THE STATE.

1. FORGERY — UTTERING A FORGED INSTRUMENT — INDICTMENT — DUPLICITY.—An indictment which charges in separate counts the forgery of a written instrument and the uttering of a forged instrument, knowing it to be forged, is not vulnerable to a motion to quash upon the ground that it is duplicitous and charges two offenses; nor is it obnoxious to the objection that two distinct and separate offenses are charged in the same indictment.

2. SAME—PLEADING.—It is correct pleading to insert in an indictment as many counts as will be necessary to provide for every possible contingency in the evidence.

3. SAME. — VARIANCE AND REPUGNANCY between the dates of the instrument, as alleged in the two counts, become immaterial in view of the *nolle prosequi* entered by the State as to the second count, and the subsequent proceedings upon the trial, which were conducted alone upon the first count.

4. PRACTICE—EVIDENCE.—Oral testimony of the contents of telegraphic dispatches sent by or at the instance of an accused is not admissible until the failure to produce the better evidence is satisfactorily accounted for.

5. SAME.—It was error to admit in evidence telegraphic dispatches purport-
ing to be replies to telegrams sent by witnesses (in this case at the
instance of defendant), inasmuch as the accused has the constitutional
right to be confronted by the witnesses against him;—and especially does
this rule obtain in the absence of proof that such dispatches were the
acts of the parties purporting to send them.
6. SAME—EXPERT TESTIMONY.—See the statement of the case for evidence
*held* sufficient to qualify a witness as an expert in hand writing.
7. SAME.—In permitting the written documents used by the expert witness
as standards of comparison to go into the hands of the jury, to be by
them used as proof of the hand writing on the alleged forged instrument,
the trial-court erred.

APPEAL from the District Court of Cameron. Tried below be-
fore the Hon. J. C. Russell.

A term of two years in the penitentiary was awarded the ap-
pellant upon his conviction for the forgery of an instrument
which is set out in the indictment as follows:

"No. 119                    LEAVENWORTH, Nov. 23d, 1886.
THE FIRST NATIONAL BANK.
                         Pay to W. W. Chester, or order, Two
Hundred Dollars................................................
"$200"                    G. M. SALENGER & BRO" En-
-dorsed:  "W. W. Chester"

Jacob Church was the first witness for the State. He testified
that on or about December 2, 1886, the defendant came to him,
in the city of Brownsville, handed him the draft described in the
indictment, and asked him to cash it. Witness examined the
draft, and told defendant that if, upon making inquiry in town,
he found the draft to be all right, he would cash it. Defendant
then asked for a small advance on the said draft, and witness
told him to endorse it. After considerable attitudination and
hesitation the defendant signed his name across the back. Wit-
ness then took the draft to the business house of Messrs. Bloom-
berg & Raphael, and consulted Mr. L. Cowen about it. Cowen
prepared a telegram to the First National bank of Leavenworth,
inquiring about it. Witness showed that telegram to the de-
fendant, and at the request of the defendant, who went with
him to the telegraph office, sent it, paying for the transmission
himself. Meanwhile defendant asked for a little more money,
which witness gave him. At this point the State introduced in

evidence a telegram, purporting to be a reply to the telegram previously sent by him to the First National bank of Leavenworth, which reads as follows: "To Bloomberg & Raphael, Brownsville. Do not know anything about draft—G. M. Salenger & Bro.—First Nat'l Bank." Witness then showed this telegram to defendant and asked him what he was going to do about the matter. He said that he would telegraph Tom H. Petters, who he said sent him the check. Witness went with him to the telegraph office, and paid for the transmission of a telegram to Tom H. Petters, Leavenworth, Kansas, which the defendant signed, "Mondefore" or "Standifore." Defendant then asked for more money and witness gave him two dollars, making in all about eleven dollars obtained by him. Defendant's telegram was answered by the operator at Leavenworth, "party not found," and asking for directions. The witness afterwards went to see the defendant, and found him at Mrs. Miller's, suffering from the effects of laudanum which he had taken with suicidal intent. He then told the witness that he would telegraph J. W. Taylor, a wealthy man, who he said lived at Austin and would help him. He sent a dispatch to Austin to Taylor, for the transmission of which the witness paid, stating that he was in trouble and asking help. That dispatch was answered: "No such man in the country." At the time that defendant gave witness the check, he handed him a letter which he claimed to have received from Petters, enclosing the check, and the business card of G. M. Salinger & Bro., and the envelope in which the letter was enclosed.

L. J. Smith was the next witness for the State. He qualified himself as an expert in handwriting by testifying as follows: "I have known the defendant about two years. He belonged to the same command with me. I have seen him write often, and know his handwriting. I am an expert in writing, by having written a great deal, and by having seen and read a great deal of writing." Witness was here shown a book which he said was the "Library Record Book of Post Library, Fort Brown." His attention being called to a particular page, he said it was in the handwriting of Lieutenant French. Another particular page he declared was in the handwriting of the defendant, who was the post librarian at the time that witness was sergeant-major of the regiment. Witness was then shown the check alleged to be forged, the Tom H. Petters letter and envelope. He declared that the defendant filled in the check,

wrote the name G. M. Salinger & Bro., endorsed "W. W. Chester" on the back, wrote the Petters letter and addressed the envelope.

B. Kowalski, postmaster at Brownsville, testified that an invariable rule in the postoffice was to stamp the date of arrival on the reverse side of all except drop letters, which were always stamped on the face. The envelope in evidence bore no postmark, but may have had one on the fragment torn off. It bore no receipt mark on the reverse side. The faint trace of a stamp indicates that the envelope had been in a postoffice. Letters are sometimes received stuck together, and, while not probable, it is barely possible such letters pass through the office without being stamped on the reverse side.

The State next introduced in evidence the alleged forged instrument, the business card of C. M. Salinger & Bro., the envelope enclosing the Petters letter, and also the said letter, which reads as follows:

"LEAVENWORTH, Nov 25, 1886.

"Mr. W. W. Chester,
Brownsville, Tex.

"DEAR WALTER: Yours of the 9 is just at hand. I regret that it did not come sooner. It followed me to St. Louis and back and out to Leavenworth. Why in the devil did you not tell some place to send you exchang. You must be crazy. I thought of waiting until I went back to Kansas City and send you exchange on some southern place, but your letter has been following me so long I am fearful you may want the money ear this may reach you. Mr. Salinger sayes he is slightly acquainted in Fort Brown. So I send you his firm check for Two Hundred dollars, which you can get cashed by paying a small discount.

Now Wat. the two hundred I send you is only a part of what I have sened Dont be a fool any longer. I will leave for our old home as soon as I get through here. Billy Underwood is still at the Russ House. Now I shal expect you to take Christmas diner with me at our old home on Vaness Avenue. Now dont be a fool any longer Wat (come to us.)

"I am as ever Wat your friend

"TOM H. PETTERS"

The envelope was addressed to "Mr. W. W. Chester Brownsville, Texas."

J. C. Scott testified that he was the county attorney of Cameron county, and represented the State on the preliminary trial of the defendant. Defendant came to witness's office on the Sunday before his arrest, and, in the conversation about this forgery which ensued, said to witness: "If I did do it you can't prove it." During the progress of the examining trial, defendant again spoke to witness about this matter, being fully warned that his statements might be used against him as evidence. He requested witness to telegraph G. M. Salinger & Bro. Witness did so and received reply as follows: "Leavenworth, Kansas, January 9, 1887. To J. C. Scott, county attorney: Draft forged. Don't know Chester. Letter by mail. C. M. Salinger."

The motion for new trial raised the questions discussed in the opinion.

*W. A. Crafts* and *B. Coopwood,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   Appellant stands convicted of forgery, upon an indictment containing two counts, viz: one for forgery, and one for attempting to utter or pass as true, an instrument in writing, knowing the same to be false and forged. Appellant moved to quash the indictment, amongst other grounds, because the same is bad for duplicity, and because it is repugnant.

An indictment for forgery which, in separate counts, charges forgery and the utterance of a forged instrument, knowing it to be forged, is not vulnerable to a motion to quash upon the ground that it is duplicitous and charges two offenses, nor is it obnoxious to the objection that two distinct and separate offenses are charged in the same indictment. (Boles v. The State, 13 Texas Ct. App., 650; Foute v. The State, 15 Lea (Tenn.), 712). It is not only permissible, but is commendable, to insert in an indictment as many counts as will be necessary to provide for every possible contingency in the evidence. (Shubert v. The State, 20 Texas Ct. App., 320, citing Code Crim. Proc., art. 423; Gonzales v. The State, 12 Texas Ct. App., 650.)

It is unnecessary to discuss the effect of the apparent variance and repugnancy between the dates of the instrument as set out in the two counts. This matter, if of any serious moment whatever, was done away with entirely and eliminated from the case

by the action of the district attorney, who, after the introduction of the testimony was closed, entered a *nolle prosequi*, and dismissed the second count, leaving the first count alone as the charge against defendant. And upon this count alone the jury were expressly restricted in their findings by the charge of the court subsequently given. The verdict and judgment are valid, sufficient, and in accordance with the charge of the court, and the first count upon which alone a conviction was sought and claimed. There is no error made to appear in any matter complained of growing out of the indictment.

During the progress of the trial the prosecution was allowed to prove, over objection of defendant, by one Church, the contents of a telegram sent by witness, at the instance and request of defendant to the First National Bank, Leavenworth, Kansas, with regard to the alleged forged draft, signed "Bloomberg & Raphael;" also by said witness the contents of two dispatches sent by defendant, one to Tom H. Petters, Leavenworth, Kansas; and one to Mr. Taylor, at Austin; and in connection with said evidence the State was permitted, over objection by defendant, to read in evidence a telegram purporting to be a reply to the one sent, signed "Bloomberg & Raphael." The State was also allowed to prove by one Scott the contents of a telegram sent by witness, at the instance and request of defendant, to G. M. Salinger & Bro., Leavenworth, Kansas, and in connection with this evidence to read a dispatch purporting to be a reply thereto from G. M. Salinger. This testimony was objected to because verbal statements as to the contents of the telegrams sent are not admissible until the failure to produce the better evidence is satisfactorily accounted for; and that, as to the telegrams received in reply, they were incompetent and inadmissible for any purpose, being the veriest hearsay, and not pretending to be under oath, and in no manner identified, or shown to be the act or acts of the parties purporting to send them.

The objections to both characters of evidence were, in our opinion, well taken. As to the telegrams sent by or at the instance of a defendant, Mr. Wharton says: "Duly proved, they may be treated as self-disserving admissions which, so far as concerns the party from whom they emanate, are subject to the usual incidents of such admissions" (citing 7 Allen, Mass., 548); but he emphatically says: "In order, however, to charge a party with a telegram, the original draft in the handwriting of the party, or his agent, must be produced. But a sender may

be regarded as the employer of the telegraph company in such a sense as to make the message sent and delivered by the company primary evidence." (Whart. Crim Ev., 8 ed., sec. 645.)

As to the pretended replies by telegram, we know of no rule of law by which they could, in any manner, become evidence against a defendant on trial in a criminal case, who is guaranteed the right by the Constitution to be confronted with the witnesses against him, and when there is not the slightest evidence that the dispatch is the act of the party purporting to send it and when the statement it contains is most conclusive and damaging to the party against whom it is used; and that, too, a statement made by a party not under oath. It is, indeed, the veriest hearsay, which even the direst necessities of justice will not excuse or tolerate. It was patent error.

Objections to the testimony of the witness Smith as an expert to prove hand writing, as shown by the draft, and with regard to the envelope and letter of Tom H. Petters, are not well taken. The witness qualified himself fully as an expert. It was error, however, to permit the Petters letter and envelope to go into the hands of the jury, to be compared by them with and prove the hand writing upon said draft. (Code Crim. Proc., art. 745; Haun v. The State, 13 Texas Ct. App., 384; Walker v. The State, 14 Id., 609.) All of these documents, the draft alleged to have been forged, the envelope, the letter and the business card, came from the defendant himself, and were handed by him to the witness Church, all enclosed in the envelope together, and as such were *res gestœ* of the attempt to pass, but only circumstances to show the forgery of, the draft.

Other supposed errors assigned are not discussed, because not deemed of a reversible character. For error in the matters pointed out above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*