## J. C. MOORE v. THE STATE.

### No. 5563.  Decided March 10, 1920.

**1.—Swindling—Indictment—Drawing Check on Bank without Sufficient Funds.**

Where, upon trial of swindling, under subdivision 4, article 1422, P. C., the indictment alleged the fraudulent acquisition by defendant of property belonging to another, naming him, by the use of false and deceitful pretenses and devices by the giving and drawing of a check upon a National bank, naming it; that he did not have sufficient funds therein, nor when in the ordinary course of business said check would reach said bank, with which to pay the same, and also no good reason to believe that said check would be paid when presented, the same was sufficient.  Distinguishing: Pruitt v. State, 83 Texas Crim. Rep., 148.

**2.—Same—Rule Stated—Pleading.**                                •

It is not believed to be necessary that the check or order used, be drawn or signed by the accused, as guilt may follow the use of such instrument drawn or signed by another, if guilty knowledge as to its worthless character be brought home to him.  Following: Dawson v. State, 79 Texas Crim. Rep., 371, 185 S. W. Rep., 875.

**3.—Same—Sufficiency of the Evidence—Fraudulent Intent.**

Where, upon trial of swindling by drawing a check upon a bank in which defendant had no funds, etc., the evidence showed that defendant purchased some goods for which he gave a check in payment and did not sign the name under which he was known but another name and repeated this transaction several times within a short time, and it was shown that he had no funds in the bank upon which he drew the checks and gave no explanation of his act, etc., the conviction was sustained.

**4.—Same—Evidence—Other Transactions.**

Upon trial of swindling by reasons of checks upon a bank in which defendant had no funds, there was no error in admitting in evidence other checks of a similiar kind to show his intent, and further to show that under the name in the instant case defendant had no account at the bank at the time in question.  Following: Strong v. State, 18 Texas Crim. App., 19.

Appeal from the District Court of Reeves.  Tried before the Hon. Chas. Gibbs, judge.

Appeal from a conviction of swindling; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jno. B. Howard, Clay Cooke* and *Roy I. Biggs,* for appelland.—On question of insufficiency of indictment: Dawson v. State, 79 Texas Crim. Rep., 371, 185 S. W. Rep., 875; Moore v. State, 81 Texas Crim. Rep., 606, 197 S. W. Rep., 728; Farmer v. State, 213 S. W. Rep., 669, and cases stated in opinion.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Reeves County, of the offense of swindling, and his punishment fixed at two years confinement in the penitentiary.

Appellant made a motion to quash the indictment, said indictment being as follows: "In the Name and by the Authority of the State of Texas:

"The Grand Jurors, duly selected, organized and impanelled as such for the County of Reeves, State of Texas, at the April Term, A. D. 1919, of the District Court of said County, upon their oaths, present in and to said court, that on or about the 3rd day of February, A. D. 1919, and anterior to the presentment of this indictment, in the county and State aforesaid, J. C. Moore, did then and there unlawfully and fraudulently, by the use of false and deceitful pretenses and devices, and fraudulent representations acquire from the possession of Sam Breen certain personal property belonging to the said Sam Breen, to wit: One automobile tire casing, two automobile tire tubes, all of the value of fifty dollars, with the intent to deprive the said Sam Breen of the value thereof, and with the intent to appropriate the same to the use and benefit of him the said J. C. Moore and with the intent to defraud, by the giving and drawing by the said J. C. Moore of a check upon the Midland National Bank of Midland, Texas, to the tenor following:

"88-389

The Midland National Bank
of Midland.

Pay to Pecos Vulcanizing Company or bearer...............$50.00

        Fifty & No|100...........................Dollars

For repairs.

                                        J. O. Blocker."

"That the said J. I. Blocker nor the said J. C. Moore at the time said check was so given nor at the time when in the ordinary course of business the said check would be presented to the Midland National Bank for payment, have sufficient funds at said Midland National Bank with which to pay the said check, and that the said J. C. Moore had no good reason to believe that said check would be paid when presented to the Midland National Bank. That the said J. C. Moore represented to the said Sam Breen that the said above described check was good, which statement was falsely and fraudulently made and the said J. C. Moore knew that said statement was false at the time when he so made it, and that the said J C. Moore knew that neither he nor the said J. I. Blocker had any funds in the Midland National Bank at the time said check was drawn and given with which to pay same and had no good reason to believe that he the said J. C. Moore or the said J. I. Blocker would have such funds at the Midland National Bank when said check was presented or when in the ordinary course of business same should be presented for payment, against the peace and dignity of the State.

This indictment sufficiently sets forth the kind and character of swindling as defined by Subdivision 4, Article 1422, of our Penal Code, said subdivision being inserted in the swindling statute in 1913, and after the rendition of most of the opinions of this court, which are cited by appellant in support of his contention that the indictment is bad. Said Subdivision 4 is as follows: "4. The obtaining by any person of any money or other thing of value with intent to defraud by the giving or drawing of any check, draft or order upon any bank, person, firm or corporation, with which or with whom such person giving or drawing said chick, draft or order has not at the time of the giving or drawing of said check, draft or order, or at the time when in the ordinary course of business such check, draft or order would be presented to the drawee for payment, sufficient funds to pay same, and no good reason to believe that such check, draft or order will be paid."

It will be observed that this is not a general definition, but a very specific statement of what will be swindling, under the terms of this subdivision. It is only necessary that there be a fraudulent intent— that money or other thing of value be obtained—and that the means by which the same is obtained be a check, draft, or order drawn or given by one who has not sufficient funds in the hands of the payor of said instrument, at the time the same is drawn or given, or at the time the same will be presented, in the ordinary course of business, with which to pay said draft or other instrument, or who has no good grounds to believe that such instrument will be paid.

Looking to the indictment in the instant case, it will be seen that it alleges the fraudulent acquisition by appellant of property belonging to Sam Breen, "by the use of false, and deceitful pretenses and devices . . . by the giving and drawing by the said J. C. Moore, of a check upon the Midland National Bank . . . ," and then proceeds to allege that appellant did not have sufficient funds then, nor when in the ordinary course of business said check would reach said bank, with which to pay the same, and also no good reason to believe that said check would be paid when presented.

Appellant cites the case of Pruitt v. State, 202 S. W. Rep., 81, as authority for his contention that this indictment is bad. The facts in the Pruitt case were wholly different, as far as we can see, and the reasoning in that case is of no application here. In fact, the instant case seems to be one of the very class aimed at by the subdivision of the Swindling chapter, under which this prosecution was brought, while the Pruitt case seems to be one which was not intended to be governed thereby. In the Pruitt case, it was shown that he had for a long time been dealing with the bank upon which the alleged check was given, and that he thought he had arrangements made by which the check involved would be paid. This Court held that inasmuch as there was a failure to allege that he had no good reason to believe that the check would be paid, and also that inasmuch as the injured party

appeared to be a bank, and there was no allegation of the name of the injured party, or that it was a corporation, that the indictment was bad; but, as above stated, there seems no analogy between that case and the instant case.

It is not believed to be necessary that the check or order used be drawn or signed by the accused, as guilt may follow the use of such instrument drawn or signed by another, if guilty knowledge as to its worthless character be brought home to said accused. In Dawson's case, 79 Texas Crim. Rep., 371, 185 S. W. Rep., 875, the check made the basis of the alleged swindling, was drawn and signed by a person other than the accused. Said case was reversed because it was affirmatively shown on the trial that as soon as the accused found out the worthless character of the check, he himself ·at once deposited funds in the paying bank, so that when the check would have reached said bank in the ordinary course of business there was money on deposit with which to pay same.

It is also urged that the evidence does not support the verdict. We cannot agree with this contention. The name of the appellant seems to be J. C. Moore. It appears from the statement of facts that on February 3, 1919, he went into the place of business of the prosecuting witness, at Pecos, Texas, and bought a certain automobile casing, and some tubes; and there sat down and wrote out and delivered to the prosecuting witness in payment for said articles, a check drawn on the Midland National Bank, which check he then and there signed as J. I. Blocker. On the same day, and in the same town, appellant had some repairs made on his car, and purchased some gas and oil from a witness named Hardy, for which he also wrote and delivered a check on the Midland National Bank, and which he signed J. I. Blocker. On the day before said transactions just mentioned occurred at Pecos, the appellant was at Barstow, and bought from a witness named Dyer, one inner tube for his car, in payment.for which he then wrote and delivered a check on the Midland National Bank, to which he signed the name J. I. Harrington. It is in testimony that all of these checks were turned over to the district attorney, Hon. T. T. Garrard, who in person took them to the Midland National Bank, and presented them for payment, which was refused. The assistant cashier of the Midland National Bank testified on this trial that he had held that position for five years, and that he left home to come to this trial on Friday before (which date appears to have been May 23, 1919), and that up to the time when he left home his bank had no account with any person named J. I. Blocker, and that neither on the date the check in controversy was drawn, nor at the time when said check, in the ordinary course of business would have reached the Midland National Bank, were there any funds there with which to pay said check, and the same would not in fact not have been paid if so presented.

Appellant did not take the witness stand, or in any way by proof attempt to controvert the above facts, or to claim that when he gave

the check and got Breen's property, he had any funds in the hands of said bank, or any reason to believe that said check would be paid when presented in the ordinary course of business. There seems to us ample proof of his guilt.

Appellant objected to the introduction of each of the checks mentioned. We think the Hardy and Dyer checks admissible as affecting the intent of appellant with regard to the instant transaction. That a man should give three checks in two days on the same bank, to which he signed names other than his own, and of belief in the payment of which he offered no sort of proof, would seem to us cogent evidence affecting his intent. The authorities are numerous.

Nor do we think the court erred in permitting the assistant cashier of the bank to testify without having the bank books present that no such person as J. I. Blocker had an account at said bank at the time in question. Strong v. State, 18 Texas Crim. App., 19.

Finding no errors in the record, the judgment of the trial court is affirmed.

*Affirmed.*