# Maud Long v. The State.

No. 13992.   Delivered June 24, 1931.
Rehearing Granted March 30, 1932.

The opinion states the case.

*Gus L. Kowalski,* of Kingsville, *Heidingsfelder & Kahn,* and *Henry E. Kahn,* all of Houston, for appellant, cited authorities as follows:

On the proposition that it was error to compel appellant, while on the witness stand, to write certain words for the purpose of submitting them to the jury for comparison with the same words which were claimed by the state to have been written by appellant: Wharton on Legal Maxims, page 122, Latin Maxim, 54; Williams v. State, 61 Alabama, 33; Branch's Ann. Penal Code, page 863; Martin v. State, 80 Texas Crim. Rep., 275, 189 S. W., 262; Corpus Juris, vol. 26, p. 969; para. 135, title Forgery; Thompson v. State, 90 Texas Crim. Rep., 15; Turman v. State, 50 Texas Crim. Rep., 7, 95 S. W., 532; Gallaher v. State, 28 Texas App., 280; Thomas v. State, 157 S. W., 330 (a Missouri case); Encyclopedia of Evidence, vol. 5, p. 50, under the heading "Experiment"; Wells v. State, 101 So., 624 (an Alabama case).

On application for change of venue: Dobbs v. State, 51 Texas Crim. Rep., 692; Cox v. State, 234 S. W., 741; Randle v. State, 34 Texas Crim. Rep., 43, 28 S. W., 853; Meyer v. State, 39 Texas Crim. Rep., 500, 46 S. W., 817, etc.

In her motion for rehearing appellant cited:

Stanchel v. State, 231 S. W., 120; Branch's P. C., sec. 362; Taliaferro v. United States, 47 Fed. Rep. (2d) 699; Walker v. State, 288 S. W., 220.

On the question of alleged error in admitting testimony as to the general reputation of appellant: Brownlee v. State, 13 Texas App., 257; Trammell, 10 Texas App., 467, and Tyler v. State, 46 Texas Crim. Rep., 14.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, prepared and filed a very splendid analysis of the testimony in the record pertaining to the several questions presented on the appeal:

On the question of the right of the state to have a witness explain the existence and result of a certain forgery case shown to have been brought against him aforetime. Branch's P. C., page 60.

On the question of the alleged error involved in allowing proof of the general reputation of appellant. Sketon v. State, 291 S. W., 240.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty-five years in the penitentiary.

In this case it was the state's theory, based on circumstantial evidence, that appellant poisoned her husband by giving him strychnine. Deceased habitually used Sal Hepatica. He took a dose of this powdered medicine, became violently ill, and shortly died in convulsions. The bottle of Sal Hepatica from which the dose was taken, upon analysis, was found to contain strychnine, likewise the stomach of deceased. Deceased and appellant lived at Kingsville, Kleberg county, Texas. A clerk in a drug store at Corpus Christi, Texas, testified that shortly before the death of deceased he sold to appellant a bottle of strychnine, and that in his presence and at his request she wrote in his register of poisons sold, her name, address and the purpose for which she desired said poison. The witness produced the book, identified appellant and her writing, and same was introduced in evidence by the state. According to this witness she wrote in said register "Mrs. J. D. Moore— Midway Camp—Strychnine for dogs." The state also made proof that there was no Mrs. J. D. Moore registered as a guest at Midway Camp in Corpus Christi at said time.

Thereafter appellant took the stand as a witness in her own behalf and specifically denied being in said drug store and the purchase or use of strychnine, and also denied that she wrote anything on said poison register. Bill of exception No. 13 sets forth that on cross-examination, over objection of appellant, the court compelled her to write in the presence of the jury certain signatures, including Mrs. J. D. Moore, and the words "Middle of December," the objection to this being that same was compelling the defendant to give evidence against herself in violation of the Constitution and Bill of Rights.' (Constitution, art. 1, sec. 10).

With the utmost deference to the views of others, to the writer the principle involved and applicable is clear, and the rule obvious. As said in Gallaher v. State, 28 Texas App., 247, 12 S. W., 1087, 1095, cited by appellant herein: "It was the privilege of the defendant to not give evidence against himself, but it was within his power, and was his right to waive such privilege, and, having done so, he can not complain. * * * We have found no authority, and have been referred to none, which holds

that a defendant may not voluntarily give evidence against himself, or may not accede to a proposal to give evidence against himself."

An ordinary witness has no right of option to choose whether he will become such, but may be forced on the stand by compulsory process, and hence in obedience to our law he may thereafter, in a proper case, decline to answer questions whose answers would tend to criminate him. The accused, on the other hand, knows in advance of becoming a witness, that if he take the stand the state will seek to elicit from him every fact affecting his status as a witness and pertinent to his guilt in the particular case on trial. Prior to becoming a witness he is wholly immune from inquiry. The Constitution protects him. When he elects to waive its shelter he thereby abandons his right to refuse as a witness. He may not thereafter give answer only to such questions as those whose reply would favor himself, but must yield to all pertinent inquiry. His voluntary offer of personal testimony deemed by him competent and material to the issues, amounts to a waiver on his part as to any relevant fact, because each relevant fact is and must be but a part of the whole case. Nor are we able to draw the fine distinction that the accused may give testimony with his lips or by gestures, and be cross-examined as to same, but that he may not be asked to give manual demonstration of matters material. The point here immediately at issue; that is, did she write, was affirmed by the clerk of the drug store mentioned, and was by appellant pointedly denied by her oral statement. Comparison of handwriting by the use of authentic signature, is a form of testimony quite common in all jurisdictions. In this state by the terms of article 731, C. C. P., such comparison is specifically authorized by the jury itself. Fry v. State, 86 Texas Crim. Rep., 73, 215 S. W., 560; Cone v. State, 89 Texas Crim. Rep., 587, 232 S. W., 816. We know of no rule of reason or law that would compel the state to rest upon its cross-examination of the verbal denial by the defendant, and which would refuse the state the right to have her give before the jury her undeniable signature which might then be used for purposes of comparison and the verification or destruction of her story. As said in Foster v. People, 18 Mich., 275: "The right to decline answering as to these minor facts, is merely accessory to the right to decline answering to the entire criminating charge, and can be of no manner of use when that is once admitted; and must be regarded as waived when the objection to answering to the complete offense is waived. The law does not endeavor to preserve any vain privileges; and such a privilege as would allow a witness to answer a principal criminating question, and refuse to answer as to its incidents, would be worse than vain; for, while it could not help the witness, it must inevitably injure the party, who is thus deprived of the power of cross-examination to test the credibility of a person who may, by avoiding it, indulge his vindictiveness or corrupt passions with impunity. * * * And the further consideration is also recog-

nized, that a witness has no right, under pretense of a claim of privilege, to prejudice a party by a one-sided or garbled narrative."

In Connors v. People, 50 N. Y., 240, it is said: "The prohibition in the Constitution is against compelling an accused person to become a witness against himself. If he consents to become a witness in the case voluntarily, and without any compulsion, it would seem to follow that he occupies for the time being the position of a witness with all its rights and privileges, and subject to all its duties and obligations. If he gives evidence, which bears against himself, it results from his voluntary act of becoming a witness, and not from compulsion. His own act is the primary cause, and if that was voluntary, he has no reason to complain."

We further quote from State v. Wentworth, 65 Me., 234, 20 Am. Rep., 688: "He was not obliged to testify. He does testify. * * * He exonerates himself. He denies the commission of the offense charged. He is subject to cross-examination as the necessary result of his assuming the position of a witness. * * * If he discloses part, he must disclose the whole in relation to the subject matter about which he had answered in part. Answering truly in part with answers exonerative, he cannot stop midway, but must proceed, though his further answers may be self-criminative. Answering falsely as to the subject matter, he is not to be exempt from cross-examination because his answers to such cross-examination would tend to show the falsity of those given on direct examination. If it were so, a preference would be accorded to falsehood rather than to truth."

From Serrato v. State, 74 Texas Crim. Rep., 429, 171 S. W., 1133, 1142, we quote the following: "And when defendant takes the stand as a witness he is subject to the same rules as any other witness. He may be impeached, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant. Hare v. State, 56 Texas Crim. Rep., 6, 118 S. W., 544; Mirando v. State, 50 S. W., 714; Jackson v. State, 33 Texas Crim. Rep., 287, 26 S. W., 194; Hutchins v. State, 33 Texas Crim. Rep., 298, 26 S. W., 399; Huffman v. State, 28 Texas App., 177, 12 S. W., 588; Brown v. State, 38 Texas Crim. Rep., 598, 44 S. W., 176; Pyland v. State, 33 Texas Crim. Rep., 382, 26 S. W., 621; Thomas v. State, 33 Texas Crim. Rep., 615, 28 S. W., 534; Hargrove v. State, 33 Texas Crim. Rep., 456, 26 S. W., 993; May v. State, 33 Texas Crim. Rep., 74, 24 S. W., 910; Monticue v. State, 40 Texas Crim. Rep., 531, 51 S. W., 236; Hamblin v. State, 41 Texas Crim. Rep., 142, 50 S. W., 1019, 51 S. W., 1111; Alexander v. State, 40 Texas Crim. Rep., 404, 49 S. W., 229, 50 S. W., 716; Brown v. State, 57 Texas Crim. Rep., 269, 122 S. W., 566; McFadden v. State, 28 Texas App., 245, 14 S. W., 128; Mendez v. State, 29 Texas App., 608, 16 S. W., 766."

Considering the authorities cited by appellant on his point, we observe that Gallaher v. State, 28 Texas App., 280, says nothing pertinent. When, as revealed by the opinion in that case, the accused was asked to stand and put a hat on his head and handkerchief over his face in the court room so that he might be viewed thus garbed, the accused made no objection but complied. We find some dicta expressions in the opinion which go no further than to observe that if the accused had refused when requested, as above stated, a different question would be presented. In the above case the accused had not taken the witness stand. Martin v. State, 80 Texas Crim. Rep., 275, 189 S. W., 262, is cited and has in the opinion some dicta expressions, the court having theretofore said that the bill of exception presenting the point was not sufficient. The part of said dicta relied on, especially as applicable here, as laying down a rule that writing done in the presence of the jury may not be used for purposes of comparison, was said without analysis or discussion of any authorities on the principle involved, but only upon authority of cases collated by Mr. Branch at page 863, section 1411, of his Annotated P. C., reference to which discloses the citation of two cases by Mr. Branch supporting the proposition that it is error to permit the *prosecuting witness* to write his name in the presence of the jury, and then have that signature submitted to the jury as a standard of comparison by the state in an effort to show that said witness did not write an alleged forged document which the accused claimed said witness did in fact write. That a state witness, claimed by the defense to have written the alleged forged instrument, might go on the witness stand, examine said written instrument, assert on cross-examination that he did not write it, and then, with every reason of self-serving, make a written copy of said document probably as different from the original as possible, and the state then offer this for the purpose of bolstering and supporting the denial of the witness,—seems correctly held inadmissible in both cases cited by Mr. Branch. We have in the instant case no such proposition, but in fact one just the opposite. In this case the state boldly called on the opposite party to write and permit a comparison of her writing with that in question, well knowing that she had seen the written register and had every reason to write differently if she could. We are compelled to conclude that what was said in the Martin case, supra, has no application here. We agree with the rule laid down by the two cases cited by Mr. Branch. We think a more nearly correct rule as applied to the case at bar is found in Williams v. State, 27 Texas App., 471, 11 S. W., 481; Hunt v. State, 33 Texas Crim. Rep., 252, 26 S. W., 206; and Ferguson v. State, 61 Texas Crim. Rep., 152, 154, 136 S. W., 465, in which latter case Judge Davidson, discussing the objection that the document offered as a standard for comparison of handwriting was written by the accused while under arrest and unwarned, qotes approvingly from Hunt's case, supra,

as follows: " 'The act of signing the document was neither an admission nor a confession by the defendant. It was not an act tending to show guilt. It does not come within the letter or reason of the rule. The fact that defendant was in custody when he signed the application would not likely affect the signature in any manner so as to render it unfit for use as a standard of comparison. That he did sign it was no evidence against him. There was no error in the matter.' "

We are inclined to question what is said in Turman v. State, 50 Texas Crim. Rep., 7, 95 S. W., 533, to the effect that one who has voluntarily taken the witness stand may not be required to place a cap on his head for the purpose of being seen thus garbed by a girl whom he is accused of attacking. It seems admitted in that case that no supporting authority had been found, and that the holding in same is contrary to what had been said by this court in Bruce v. State, 31 Texas Crim. Rep., 590, 21 S. W., 681, and the authorities cited therein. See Bryant v. State, 18 Texas App., 115; Walker v. State, 7 Texas App., 245; Meyers v. State, 14 Texas App., 35; Hart v. State, 15 Texas App., 202. In Pitts v. State, 60 Texas Crim. Rep., 524, 132 S. W., 801, speaking through Judge Ramsey, we upheld the reception of testimony that after arrest the accused was compelled to place his foot by and in a certain track. The Turman case, supra, seems not to have been followed on this point in any subsequent case, and to be out of line with other holdings of this court and with what we conceive to be the correct principle of law, and is not regarded as authority against our announcement in this instant case. Appellant cites Thompson v. State, 90 Texas Crim. Rep., 222, 234 S. W., 401. That case is not like the one before us, and we further note that at the time the appellant in the Thompson case was asked to stand up in order that the witness might more clearly see him, he had not taken the witness stand and had not waived his constitutional privilege of not giving evidence against himself,—which we consider the very decisive point to be considered in all such cases.

What we have said above disposes of the further objection made by appellant to the use, for purposes of comparison by the jury, of what appellant wrote while on the witness stand, these being the grounds of the objection and exception in said bill, and same have been considered, though presented in one bill, inasmuch as they are so closely related as to amount to but one subject.

Bill of exception No. 14 complains of the refusal of a new trial sought because apparently of misconduct of the jury or the prior prejudice of one member of the jury. Oral testimony was heard by the court and in same the affidavits attached to the motion for new trial appear to have been contradicted, and we are not prepared to say that in the condition of conflict appearing the court was without ample reason for

·overruling said motion. This also applies to the refusal of a change of venue, complaint of which appears in bill of exception No. 15.

We do not think the argument complained of in bills of exception Nos. 1 and 2 of such character as to call for a reversal. The court instructed the jury not to consider the argument set out in bill of exception No. 1.

Bill of exception No. 5 sets up that the witness Mayo was permitted to testify upon re-direct examination by the state that a forgery case against him, inquiry regarding which had been made by appellant on cross-examination,—was not tried, and to explain the reasons why, as well as to further explain why he did not appear for trial at a time when his bond was forfeited, a fact developed on cross-examination. These questions having been brought out on cross-examination for the purpose of affecting the credibility of the witness before the jury, brings the matter well within the rule laid down in section 94, Branch's Annotated P. C., where many cases are cited holding that a witness may explain any fact brought out which may tend to discredit him. Bruce v. State, 31 Texas Crim. Rep., 594, 21 S. W., 681; Hedrick v. State, 40 Texas Crim. Rep., 535, 51 S. W., 252, are among the authorities cited. See, also, Moehler v. State, 98 Texas Crim. Rep., 238, 265 S. W., 553.

Bill of exception No. 6 sets out appellant's objection to the testimony of Mr. Wardlow, chief chemist of the department of health at Austin, who testified that he received by express in September, 1929, a package from Dr. A. C. Jones of Kingsville, Texas, containing a stomach and a bottle of Sal Hepatica, both of which he examined and found to contain styrchnine in quantities sufficient to produce death. The witness further testified that the results of his analysis he wired to the authorities at Kingsville, and that he made written reports, which we find set out in the statement of facts of date September 16, 1929. Appellant's objection was that there was nothing to show the stomach examined and analyzed was that of deceased, or the bottle the one from which he took the alleged poison. We are of opinion that the objection goes to the weight and not to the admissibility of the testimony. Dr. Jones testified that he removed the stomach from a man named Long at Kingsville, and sent same, together with a dog's stomach and a bottle of Sal Hepatica, by express to Austin in September, 1929, and that he received by mail a report of the analysis and examination of said things from Austin. He testified further that before sending the bottle to Austin he tasted its contents and it was very bitter,—that strychnine and quinine were both very bitter. By another witness who knew deceased, it was shown by the state that witness took a bottle labeled Sal Hepatica from beside the body of deceased and that he gave it to Dr. Jones in the same condition he found it. He testified that he was present when Dr. Jones removed from the dead body of deceased its stomach. We think said stomach and bottle sufficiently identified to

justify the admission of Mr. Wardlow's testimony as to the result of his examination.

Appellant as a witness swore that deceased was a maker and drinker of beer; that he frequently got drunk, and was arrested for driving a car while intoxicated; that he assaulted and maltreated her. On cross-examination she testified as follows:

"I said that I married my husband, Jim Long, in 1917. He did not join the army of the United States. He was drafted. He became a soldier. He went from Victoria to San Antonio and to Fort Worth and to Jacksonville, Florida, and to France."

This was objected to. We do not think the admission of this testimony, if error at all, was of such material character as to call for a reversal.

Mr. Branch says in section 344 of his Annotated P. C., with citation of many authorities, that a wide discretion is confided to the trial judge regarding application of the "rule," and that except in clear cases of abuse of his discretion, the action of the trial court in refusing to permit witnesses to testify who violated the rule or who were not put under the rule, will not be revised. Thomas v. State, 33 Texas Crim. Rep., 615, 28 S. W., 534; Powell v. State, 50 Texas Crim. Rep., 592, 99 S. W., 1005, are among those cited. The admissibility of the testimony of a witness who was not placed under the rule when invoked, being a matter addressed to the sound discretion of the trial court, we must presume correctness in the court's ruling unless the contrary appears. We do not think there was any abuse of the discretion of the trial court in the case before us in sustaining the objection to the testimony of the witness Carter who appears to have been in the court room and heard witnesses testify about the very matter about which he was later called to testify.

As to bills of exception Nos. 9 and 9½ which reflect appellant's objection to the testimony of a witness that he examined the guest register at Midway Camp at Corpus Christi and that same did not show the name of Mrs. J. D. Moore, we observe that testimony of one who has examined a book such as the one in question and is prepared to say what it does *not show*, is not objectionable as secondary or hearsay. Strong v. State, 18 Texas App., 24; Evans v. State, 40 Texas Crim. Rep., 57, 48 S. W., 194; Ferguson v. State, 79 Texas Crim. Rep., 646, 187 S. W., 476; Moore v. State, 87 Texas Crim. Rep., 77, 219 S. W., 1097.

Bill of exception No. 11 sets out that state witness Moseley testified that appellant's reputation for being a peaceable law-abiding citizen was bad, but on cross-examination he said that when he spoke of the general reputation of appellant and said it was bad, he had reference to her moral character or reputation for chastity. Appellant moved apparently to strike out all the testimony of the witness. Such motion was correctly denied by the court in as much as the witness had given much other material evi-

dence. If appellant would say that we ought not to hold her bound by the exact language of said bill of exception, we might agree provided the same lenience be accorded the state. The statement of facts shows that after having made the answer upon which appellant predicated her motion to strike out, the witness went further and said he knew the difference between law-abiding and reputation for chastity. Clearly the motion as made and set out in this bill of exception was properly denied.

We see nothing wrong with the form of the verdict which simply found appellant guilty as charged in the first count of the indictment and affixed a penalty. Nor do we think the jury without sufficient facts before them upon which to predicate the verdict of guilty and the punishment fixed. Some of the testimony is disgusting in its details. The illicit love of one person for another has often been held sufficient motive for murder, and has some times caused war. The abundant evidence to support such motive in the instant case,—the form, time and manner of the death of deceased by strychnine poisoning, the identification of appellant as the purchaser of strychnine in a town other than the one in which she lived shortly before deceased was poisoned, her denial of such purchase, the apparent flimsiness of the suggested use of poison by another woman,— seem to leave little, if any, room for doubt of the correctness of the decision of the jury. We have given this case careful consideration and find in same no reversible error.

The judgment will be affirmed.

*Affirmed.*

HAWKINS, JUDGE (coucurring).—The attitude of a defendant who waives his constitutional right and takes the stand as a witness in his own behalf is well expressed by Mr. Branch in section 147, page 83 of his Ann. P. C. of Tex., and many authorities are cited supporting the text, among them being Huffman v. State, 28 Texas App., 177, 12 S. W., 588; Jackson v. State, 33 Texas Crim. Rep., 287, 26 S. W., 194, 622, 47 Am. St. Rep., 30. He states the rule as follows: "When defendant takes the stand as a witness he is subject to the same rules as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying in behalf of defendant, except where some statute forbids certain matters to be used against him, such as proof of his conviction on a former trial of the present case, his failure to testify on a former trial or hearing, and the like."

It is apparent from the many holdings of our own court that when a defendant takes the witness stand he subjects himself to all legitimate and proper cross-examination. Whether or not the court erred in requiring appellant to write before the jury at the instance of the state, turns then upon the question as to whether that was proper cross-examination.

We quote from Corpus Juris, vol. 22, sec. 888b, as follows: "The person whose handwriting is in question cannot be permitted to write something at·the trial and offer the specimen so.prepared as a standard. It has been said that the court will not, as a rule, order the person whose writing is in question to write in court at the suggestion of counsel, but it has power to make such an order, in which case the standard so obtained may be used, *and the better view appears to be that where a witness has denied what purports to be his handwriting, he may on cross-examination be called upon to write in order that such writing may be compared with the disputed writing for the purpose of contradicting him. Where a signature has been written in open court by the person in question at the request of the opposite party, the party calling for the writing may introduce it in evidence.*" (Italics as they appear in the above quotation, are ours.)

Upon the complaint made by appellant of permitting the jury for the purposes of comparison to use the writing of appellant made upon the trial with that contained in the druggist's record there appears in Chester v. State, 23 Texas App., 577, 5 S. W., 125, 127, a statement which would appear to be against the view expressed in the opinion of affirmance, but when the case is analyzed we do not regard it as out of line with the conclusion announced in the present case. Chester was charged with the forgery of a draft purporting to be drawn in his favor and signed by G. M. Salenger & Bro. upon the First National Bank of Leavenworth. Chester requested a party in Cameron to cash the draft, exhibiting to him a letter which purported to be from Tom H. Petters advising Chester that he was enclosing to him the draft in question. Chester signed his name as an indorsement on the back of the draft. An expert witness testified that in his opinion the·same party who wrote the name of W. W. Chester on the back of the draft also wrote the name of the drawer on the draft, and also that it was his opinion that he had written the letter purporting to be signed by Petters. The court held that evidence with reference to Petters' letter and the envelope in which it purported to have been received by appellant was permissible because it was all res gestae of the attempt to pass the draft, but in the opinion used this expression: "It was error, however, to permit the Petters letter and envelope to go into the hands of the jury, to be compared by them with and prove the handwriting on said draft." When the facts of the case are understood it is apparent that the holding of this court in that case was correct; the only admitted or proven signature of Chester was his name written upon the back of the draft. The Petters signature was not an admitted, nor a proven, writing of appellant, save.as testified to by the expert as a matter of comparison. The fact to be determined by the jury was whether Chester had signed the name of Salenger & Bro. to the draft, and of course, it was not proper to submit to the jury for the purpose of com-

parison the signature on the Petters letter which was not an admitted or proven signature of accused. See article 731, C. C. P.

Believing the opinion of affirmance has correctly decided the case I record my concurrence therein in connection with the observations here made.

MORROW, PRESIDING JUDGE (dissenting).—Rhodes, a witness for the state, testified that he sold strychnine to a woman whom he had never previously seen and whom on the trial of the case he identified as the appellant. The person purchasing the strychnine had, according to the testimony of Rhodes, inscribed in a book the words, "Mrs. J. D. Moore." Upon the trial, according to the bill of exception, the appellant was *forced and compelled* to write in the presence of the jury, the following: "Mrs. Maude Long, Mrs. Jim Long, Mrs. J. D. Moore, middle of December."

The writing last mentioned was, over the appellant's objection, introduced in evidence against her and given to the jury for the purpose of comparison with the writing first mentioned above introduced by the state.

In the bill of rights (article 1, section 10, Const. of Texas), it is declared that one accused of crime shall not be compelled to give evidence against himself. When the accused in the present trial became a witness in her own behalf, she waived the right to complain of proper cross-examination. That the scope of the cross-examination is limited is affirmed by all writers on the subject. As to the scope of the limitation, the decisions in other jurisdictions are conflicting to a degree amounting almost to confusion. In many of the precedents in other states the accused was not a witness and for that reason the authorities are not applicable. The same is true of some of the decisions in our own state. It seems clear that a demonstration by an act which tends to self-incrimination is as obnoxious to the immunity guaranteed by the Constitution as one by words. See Ruling Case Law, vol. 28, p. 434, sec. 20; Moore v. State, 87 Texas Crim. Rep., 569, 226 S. W., 415; Wharton's Cr. Ev. (10th Ed.), vol. 2, p. 1553; Wharton's Cr. Ev., supra, vol. 1, p. 617, sec. 315. See, also, Gallaher v. State, 28 Texas App, 247, 12 S. W., 1087, 1095, from which the following is quoted: "He was not required by the court to submit to the disguise and exhibition of himself before the jury. There was no compulsion used against him. He made no objection whatever to the disguise and exhibition of which he now complains. * * * If he had objected to such test and the court had required him to undergo it, a very different question would have been presented. * * * If, in this case, the defendant had declined to be disguised and exhibited, the court would doubtless have protected him in his constitutional right to be exempted from giving evidence against himself."

In Turman's case, 50 Texas Crim. Rep., 7, 95 S. W., 533, 536, the

accused became a witness in his own behalf. The court said: "We hold it was not permissible for the State to require appellant to place the cap on his head for the purpose of identification by prosecutrix. * * * *This was compelling defendant to undergo an experiment before the jury. True, he took the stand voluntarily, and was subject, as any other witness, to cross-examination; but this did not authorize the prosecution to require him to undergo an experiment."*

In Martin v. State, 80 Texas Crim. Rep., 275, 189 S. W., 262, 263, the accused, on the former trial, testified in his own behalf and wrote his name for comparison. He objected to doing so at the time. On the present trial a witness testified that he saw the defendant do the writing on the former trial. After he had taken the stand in his own behalf, a motion to withdraw this testimony from the jury was overruled. The state relied upon this writing to prove that Martin wrote the name in the alleged forged instrument. The court said: "The jury passed it among themselves, and this seems to have closed this part of the case. No experts were placed on the stand and no evidence in regard to the similarity was introduced. The name of appellant as written and the view of it by the jury was all that constituted this part of the case. Appellant denied the execution of the forged instrument under oath, and testified to facts and circumstances showing that he did not forge the instrument or write any part of it. This was a serious question in the case, the State relying upon the fact that he passed the instrument to show that it was a forgery and that he knew it was a forgery. * * * Under the circumstances of this case the writer does not believe this ought to have gone before the jury. There ought to have been other testimony than the mere passing of the signature to the jury. What the jury discovered or thought they discovered from comparison is not shown by any testimony. The only means of arriving at what they did discover is to be found in the verdict they rendered."

In Ency. of Evidence, vol. 5, p. 51, are collated many cases holding that the compulsory exhibition of the person of one accused of crime offends against the constitutional guarantee against self-incrimination. The same principle is applicable to footprints. In Moore's case, 87 Texas Crim. Rep., 569, 226 S. W., 415, in holding admissible footprints made by the accused at the instance of the officer having him in charge, the following expression is used: "It is not a case in which the accused was compelled to make the footprints, but one in which it was voluntarily, and inhibited, so far as we are aware, by no rule of evidence. Underhill on Crim. Evidence, sec. 374, p. 646, from which we quote:

" 'Nor can the accused be compelled to place his foot in a shoe-track found in the vicinity of the crime. His refusal to do so can neither be proved against him nor commented on by counsel, while, generally, if he is forcibly compelled to do so, a witness, who was present at the comparison, cannot testify to the results. But it may always be proved that the

accused voluntarily went to the *locus in quo* and placed his foot in footprints found there and that his foot fitted the footprints perfectly.' "

The demand that the accused experiment in handwriting for the purpose of comparison, not being proper cross-examination, it was not embraced in the waiver of privilege implied by her becoming a witness. The accused, therefore, was not bound to make the experiment, and the court exceeded its power in forcing her to do so.

The opinion of this court in Kennison v. State, 97 Texas Crim. Rep., 154, 260 S. W., 174, while dealing specifically with the subject of the confession of the accused, is not without weight in the solution of the question at present under consideration. After his arrest, Kennison was directed by the county attorney to write his name and certain other words upon a piece of paper. The text of the opinion reversing the conviction was that the use of the writing for the purpose of comparison upon the trial of the accused was compelling him to give evidence against himself and was violative of the confession statute, article 727, C. C. P., 1925.

In the present instance, the bill of exception complaining of the action of the court, both in forcing the accused to write and in receiving the result of the experimentative evidence, is very carefully drawn and clearly presents the legal questions arising from the transaction. From the bill, the following quotations are taken:

"The Court states as a fact that when the District Attorney asked the defendant, Maude Long, to write said lines, above set forth, in the presence of the jury, defendant objected because same was improper, was compelling defendant to give evidence against herself, and was, in effect, forcing and compelling the defendant to give evidence against herself, contrary to law and the Constitution of this State, which objection was by the Court overruled, and defendant was by the Court overruled, and defendant was compelled to write said four lines, above set forth, in the presence of the jury."

"The Court overruled all of said objections and compelled the defendant to write said four lines, above set forth, in the presence of the jury; and the Court further states as a fact that he permitted the State to introduce in evidence and exhibit to the jury the said four lines, so written in the presence of the jury; and the Court further states as a fact that he permitted the State to introduce in evidence and exhibit to the jury the said four lines, so written in the presence of the jury, for the purpose of comparison with the poison book of the name of Mrs. J. D. Moore, as above set out; and the Court certifies that all of said proceedings occurred over said objections of the defendant as herein stated, and the defendant duly objected and excepted as to the compelling of the defendant to write said four lines, above set forth, and in permitting the state to introduce them to the jury for comparison with the name of Mrs. J. D.

Moore in the poison book, and the defendant objected for all the reasons above set forth."

Article 731, C. C. P., 1925, reads as follows:

"It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath."

In the application of the statute, it usually occurs that there are called either witnesses who are familiar with the handwriting by reason of having seen the alleged writer of the document write, or experts, that is, persons skilled in detecting peculiarities of written documents and qualified to give an opinion with reference thereto.

In the present case, to prove the similarity of the writing of the accused upon the trial and that written in the poison book, the state introduced no witnesses but relied entirely upon the similarity of the two. The appellant, on the contrary, introduced two witnesses who were familiar with her handwriting and who testified that in their opinion the writing in the poison book was not of her making. The writing which she did upon the trial and that in the poison book were given to the jury in order that they might make a comparison thereof. The bill of exception affirmatively states that the jury made a comparison of the handwriting and determined therefrom the identity of the writer of the two.

From the case of Martin v. State, 80 Texas Crim. Rep., 275, 189 S. W., 262, 264, we take the following quotation: "Under the circumstances of this case the writer does not believe this ought to have gone before the jury. There ought to have been other testimony than the mere passing of the signature to the jury. What the jury discovered or thought they discovered from comparison is not shown by any testimony. The only means of arriving at what they did discover is to be found in the verdict they rendered."

In the present instance, the appellant denied that she was the author of the writing in the alleged poison book and introduced witnesses who were familiar with her handwriting and supported her testimony. No experts were introduced to the contrary. Nor was there any testimony of experts to the similarity of the writing made by her upon the trial with that in the book mentioned. So far as the writer has been able to gather from an examination of many cases, the procedure mentioned is without parallel. As above stated, in the cases in which writings have been delivered to the jury for comparison there was evidence by experts in handwriting who were cross-examined upon the trial touching their reason, their experiences and the facts upon which they based their identity of the writings. It seems anomalous to put the liberty of a citizen in jeopardy based upon the identity of handwritings under the circumstances revealed by the record of the present appeal. The only prece-

dents touching, the analogous facts which have come to the writer are those cited above, namely, Chester v. State, 23 Texas App., 577, 5 S. W., 125, and Martin v. State, supra; in which the practice was condemned.

The bill of exception shows that the appellant was *compelled* to perform the physical act of writing certain words in the presence of the jury; that she write them against her will and opposed the procedure by prompt and proper objection. The words were intended for use by the state as incriminating evidence against the appellant and were so used against her will and in opposition to her objection that she was protected against such procedure by the bill of rights. So far as the experience and observation of the writer extend the procedure is novel. There are cases in this state in which the accused has performed physical acts in the presence of the jury, which cases were affirmed because the acts were done by consent or without sufficient objection. Those cases, as suggested above, indicate that if there had been proper objection, it would have been sustained. In no case coming to the attention of the writer has it appeared, as it appears in this one, that the accused on trial was *forced* or *compelled* to do a physical act, the result of which was used on the trial for the purpose of incriminating the accused.

In construing bills of exception, it has been uniformly held that the certificate of the trial judge showing the facts on which the ruling was made is conclusive. See Branch's Ann. Tex. P. C., sec. 217; Vernon's Ann. C. C. P., vol. 2, art. 667, note 40; also Bank v. State, 95 Texas Crim. Rep., 384, 254 S. W., 962; Morris v. State, 96 Texas Crim. Rep., 605, 258 S. W., 1065; Matthews v. State, 98 Texas Crim. Rep., 404, 266 S. W., 150; Elkins v. State, 101 Texas Crim. Rep., 377, 276 S. W., 291; Curlee v. State, 104 Texas Crim. Rep., 15, 282 S. W., 580. Many other cases are in point. The action of the court, therefore, as reflected by the bill, pointedly requires this court to decide whether the accused, as a witness, can be compelled to give evidence against herself. A witness may be punished by way of contempt proceedings for his silence or his disobedience but the power of the trial court to *force and compel* him to perform a physical act (or to speak for that matter) is contrary to the letter and spirit of our organic law. If it should be held that the trial judge was right in commanding the accused to perform the experiment in question, we can conceive of no legal means by which he could compel her to comply. If the demand was a legal one, her refusal to comply therewith might be used against her on the trial as a circumstance tending to show guilt, but the court could use no force to compel compliance. In the present instance, the means adopted to compel a compliance with the court's demand are not disclosed. The bill of exception is not qualified, and contains the bald statement that the accused was *forced and compelled* to perform the act. The words of the Constitution are "he shall not be compelled to give evidence against himself." The words in

the bill of exception are that "she was compelled to give evidence against herself." In the opinion of the writer, the request of the appellant to write in the presence of the jury for the purpose of comparison was not within the scope of legitimate cross-examination under the circumstances. Even if the query did not transcend the limits of proper cross-examination, the court was without power to force a compliance. The extent of the court's authority would have been to punish by the use of the statutory methods for contempt, or to permit the use of her refusal in connection with the question to be considered by the jury against her. See Ruling Case Law, vol. 28, p. 428, sec. 13. The writer is further of the opinion that in the absence of some testimony going to show that the words written by the appellant bore evidence that they were in the same handwriting as that in the book introduced by the state, the writing should not have been delivered to the jury for the purpose of comparison.·

The writer is of the opinion that the judgment should be reversed and the cause remanded.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—In the present case, the accused was charged with administering poison to her husband. She testified and denied her guilt. There were some forty witnesses heard upon the trial. The typewritten report of the evidence covers some 280 pages. The evidence was wholly circumstantial. One of the most important circumstances upon which the state relied were certain words written in a book at the time some poison was sold by a druggist. Appellant denied the writing. She introduced witnesses who declared that it was not the handwriting of the accused. Witnesses were introduced to support the theory of the state that the motive for the homicide was the infatuation of the appellant for a young boy. This was controverted. In making up their verdict, the jury had before them this mass of verbal testimony and documentary evidence. It was upon the evidence so introduced before the jury that the law demanded that they must form their verdict.

Private counsel for the prosecution was an eminent lawyer and a distinguished citizen. He knew the jurors. He deserved and had their respect and confidence. He said to them: "I tried this case twice. I had to convince myself, beyond a reasonable doubt, that this lady was guilty beyond a reasonable doubt, before I could consent to help the State."

How was he thus to convince himself? How would the jury view his statement? If, in their deliberation, they were in doubt touching the conflict of testimony, the extent if any, to which they placed reliance upon the statement of counsel that he, by means undisclosed, had in advance of accepting employment, ascertained that the accused was guilty,

it is not possible to know, nor is it possible to demonstrate, that the recited pre-investigation and pre-judgment of counsel may have had great weight in turning the scale against the accused. That in making the remarks the zeal of counsel carried him beyond the limit of legitimate debate and into the domain of testimony, is not open to question. Giving emphasis, as well as repetition, to his announcement, counsel apparently in concluding his argument, said: "If we have convinced you in this case like we have convinced ourselves of the guilt of the defendant, you ought to have no trouble in arriving at a verdict."

Prompt objection was in every instance made to the argument mentioned, and at the request of the appellant, the jury was by the court instructed to disregard the remarks, all of which is shown in appellant's bill of exception. Appended to the bill is the following statement by the trial judge: "The trial court finds as a fact that Private Prosecutor Crenshaw has long resided in Kleberg County and was personally acquainted with the members of the jury before whom the case was being tried and further finds that he is a lawyer of distinction and prominence in Kleberg County."

The impropriety of counsel in argument putting before the jury his opinion of guilt or innocence of accused on trial has been declared repeatedly and consistently, as is reflected from the opinions of the court from the beginning of its history. Illustrative, are Habel v. State, 28 Texas App., 588, 13 S. W., 1001; Young v. State, 19 Texas App., 536; Kennedy v. State, 19 Texas App., 618; Spangler v. State, 42 Texas Crim. Rep., 233, 61 S. W., 314; Hawkins v. State (Texas Crim. App.), 71 S. W., 756; Hinton v. State, 65 Texas Crim. Rep., 408, 144 S. W., 617. In some of the cases noted, the point turned upon a failure to request the court to withdraw the objectionable statement. In others, it was held that the remarks, though objectionable, would not furnish ground for reversal, where the court told the jury not to consider them. From the case of Habel v. State, supra, we quote as follows: " 'While it is true that authorities treating upon the subject say that counsel either for or against the prisoner should never express their opinion as to the guilt or innocence of the accused, yet we would hesitate at this day to reverse a judgment on account of a violation of this rule.' Young v. State, 19 Texas App., 536; Kennedy v. The State, Id., 618. There are, however, recent instances where the mode and manner of expressing such an opinion on the part of prosecuting officers has been held sufficient ground for reversing a judgment of conviction. The People v. Quick, reported in full in 58 Mich., 321, 25 N. W., 302."

In the Michigan case above referred to, the court declined to withdraw the objectionable expressions. We have found no reported case in which the opinion of counsel expressed to the jury was couched in similar language to that employed in the present case. It must be admitted that

it went further than a mere expression of opinion based upon facts developed before the jury. It carried with it the expression of an abiding conviction of appellant's guilt, based upon pre-investigation by counsel. Such an opinion would or would not have weight with the jury in proportion as they did or did not have confidence in the judgment of counsel giving the opinion. In a case where the issue of the guilt or innocence of the accused was closely drawn, it might sway the balance against the accused. Necessarily, the effect of such opinion could not be demonstrated, and would be speculative. Whether the effect could be withdrawn by prompt action of the court, as was attempted in this instance, is likewise speculative, depending upon the case in its entirety.

By a plea as authorized by the statute, article 776, C. C. P., 1925, the appellant sought a supended sentence. On the issue the state called the sheriff of Kleberg county, who testified in his direct examination that he was acquainted with the general reputation of the accused in Kingsville and Kleberg county for being a quiet, law-abiding citizen, or the contrary, that such reputation was bad. From the bill the following is quoted: "Whereupon, on cross-examination the said Moseley testified that the defendant had never been indicted for any offense, no complaint had ever been filed against her for violation of any law, and that the defendant had never been arrested prior to this offnse; and said witness further testified that when he spoke about the defendant's general reputation and said that it was bad, that he had reference purely to her moral character or reputation for chastity."

The appellant, at the time, sought to have the testimony of the witness excluded for the reason that its inadmissibility was shown by his cross-examination. The withdrawal of the testimony of the sheriff on the ground stated was sought and refused by the court, to which exception was reserved. It is clear, we think, that the sheriff was not qualified to give an opinion with reference to the general reputation of the accused for peace and quietude. It became manifest that he did not know such reputation but that he had in mind the reputation of the accused for morality and virtue.

The court overruled the appellant's objection and let the testimony as outlined go to the jury. In the light of the testimony of the sheriff and the procedure disclosed in the bill, the ruling of the court carried the implication to the jury that the general reputation of the accused for moral character and chastity was a relevant matter to be considered upon the issue of a suspended sentence, and the testimony of the sheriff, while lacking in knowledge of the general reputation of the accused for peace and quietude, was qualified to state the opinion that her reputation for chastity was bad, and that the testimony of the sheriff to the effect stated was a proper subject for the consideration of the jury, both on the merits of the case and the question of a suspended sentence. That the

ruling of the court in refusing to exclude the sheriff's testimony in toto was error, no doubt is entertained. Bearing in mind the nature of the case before the jury, namely, that it was contended by the state that the appellant poisoned her husband to the end that she might gratify her lust arising from her infatuation for another man, the testimony in question was capable of use by the jury upon the issue of guilt and was calculated to impair her defense and augment the strength of the state's case on the merits of the prosecution.

Dealing with the application for a suspended sentence, in article 778, C. C. P., 1925, it is said: "The court shall permit testimony as to the general reputation of defendant to enable the jury to determine whether to recommend the suspension of sentence."

From Texas Jurisprudence, vol. 12, p. 749, sec. 373, the following is quoted: "The reputation contemplated by the statute is the general reputation of the accused for being a peaceable and law-abiding citizen in the community in which he has lived."

In support of the text, the following precedents are cited: Skelton v. State, 106 Texas Crim. Rep., 90, 291 S. W., 238; Freddy v. State, 89 Texas Crim. Rep., 53, 229 S. W., 533; Martoni v. State, 74 Texas Crim. Rep., 90, 167 S. W., 349; Campbell v. State, 73 Texas Crim. Rep., 198, 164 S. W., 850.

Neither of the matters to which reference is made above was discussed at any length in the original opinion. Attention of the court was pointedly drawn to them in the appellant's motion for rehearing. Our re-examination of the record in the light of the motion, forces the conclusion that the remark of counsel, notwithstanding the attempt of the court to withdraw it, was harmful and that the action of the court in refusing to withdraw the testimony of the sheriff from the consideration of the jury constituted error that cannot be regarded as harmless, but, on the other hand, was likely to injure the accused and deprive her of a fair and legal trial to which she is entitled under the law.

The other complaints in the motion are overruled.

The motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*